EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br>Rebecca Rodríguez Mercado | 2005 TSPR 144<br><br>165 DPR _____ |

Número del Caso: CP-2002-7

Fecha: 15 de septiembre de 2005

Colegio de Abogados de Puerto Rico:

Lcda. María De Lourdes Rodríguez
Lcdo. Angel N. Candelario Cáliz

Abogados de la Peticionaria:

Lcdo. Pedro Ortiz Álvarez
Lcdo. Jesús Antonio Rodríguez Urbano
Lcda. Lourdes María Torres Esteves
Lcdo. Jorge Martínez Luciano

Materia: Conducta Profesional
(La suspensión de la abogada advino final y firme el día 10 de octubre de 2005).

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Rebecca Rodríguez Mercado                    CP-2002-7

PER CURIAM

San Juan, Puerto Rico, a 15 de septiembre de 2005

El 27 de julio de 1995 Ángel Arroyo Gajete, radicó una queja ante el Colegio de Abogados de Puerto Rico en contra de la Lcda. Rebecca Rodríguez Mercado.[1] En la referida queja Arroyo Gajete alegó, en síntesis, que la licenciada Rodríguez Mercado había asumido la representación legal de su hijo menor Alexis Arroyo Rodríguez en un pleito sobre remoción de albacea sin otorgar un contrato escrito ni mencionar cuáles iban a ser los honorarios a cobrar. Alegó que, luego que se transigiera el pleito y se procediera a la partición de la

---

[1] La Lcda. Rebecca Rodríguez Mercado fue admitida al ejercicio de la abogacía el 25 de junio de 1991 y al ejercicio del notariado el 31 de julio de 1992.

herencia extrajudicialmente, le adjudicaron al menor $126,000 en efectivo y tres propiedades inmuebles, en relación con las cuales se tenían que otorgar las correspondientes escrituras. Adujo que, de los $126,000 en efectivo, la licenciada Rodríguez Mercado entregó $62,000 y retuvo $64,000 señalando que sus honorarios eran el 25% de lo que recibiera el menor de la herencia. Sostuvo que, a su entender, la licenciada Rodríguez Mercado no podía retener, ni cobrar, dicha cantidad por constituir los mismos honorarios excesivos.

La Junta de Gobierno del Colegio de Abogados refirió la queja a su Comisión de Ética Profesional. Luego de celebrar la vista correspondiente[2], el 27 de enero de 1998 la referida Comisión rindió el correspondiente informe. En el mismo, la Comisión de Ética concluyó que la licenciada Rodríguez Mercado había violado el Canon 24 del Código de Ética Profesional al haber cobrado honorarios excesivos por la representación legal del menor Alexis Arroyo Rodríguez.[3] El 15 de septiembre de 2000 el Colegio de Abogados presentó ante este Tribunal el informe sobre la conducta profesional de la licenciada Rodríguez Mercado.

---

[2] Se celebró una vista ante la Comisión de Ética Profesional del Colegio de Abogados el 21 de mayo de 1996 en donde declaró el Sr. Ángel Arroyo Gajate y la Licenciada Rodríguez Mercado.

[3] Resulta importante señalar que la Comisión de Ética Profesional intentó, infructuosamente, darle a las partes la oportunidad de llegar a un acuerdo sobre los honorarios en controversia antes de someter el informe a la Junta de Gobierno.

Luego de examinar el referido informe, y la contestación presentada por la licenciada Rodríguez Mercado, el 4 de febrero de 2002, emitimos una Resolución ordenándole al Colegio de Abogados que presentara la correspondiente querella disciplinaria contra la Lcda. Rebecca Rodríguez Mercado. Así se hizo.

En la referida querella se le imputó a la licenciada Rodríguez Mercado haber cobrado una suma excesiva de honorarios en el caso del hijo del Sr. Arroyo Gajate por gestiones breves, extrajudiciales, que no incluyeron la autorización de escrituras públicas, ni actuaciones como Notario Público. En específico se alega que la querellada retuvo $64,000 de los $126,000 en efectivo que le adjudicaron a su cliente menor de edad en la partición de la herencia del abuelo del menor, Don Pedro Germán Arroyo Pratts. De igual forma, la licenciada Rodríguez Mercado no preparó, ni otorgó, las escrituras para la inscripción de los tres bienes inmuebles que le adjudicaron al menor.

El 2 de enero de 2003, la licenciada Rodríguez Mercado presentó su contestación a la querella en donde alegó que su cliente no era el padre del menor sino que era la madre, la Sra. Ana Mercedes Rodríguez Candelario, que recurrió a ella para que asumiera la representación legal de su hijo en un pleito de remoción de albacea. Asimismo, alegó que las partes transigieron el pleito y acordaron llevar a cabo la partición de la herencia del abuelo del menor extrajudicialmente.

Señaló que ella <u>retuvo</u> los $64,000 ya que había pactado con Rodríguez Candelario honorarios contingentes para el caso de su hijo de 25% de lo que se obtuviera de la herencia del Sr. Arroyo, y el menor había obtenido un total de $256,000 en bienes.[4] Señaló, además, que dichos honorarios son razonables toda vez que como muchos de los bienes del causante no estaban a nombre de éste, tuvo que emplear más de 1,900 horas de trabajo por alrededor de seis meses para lograr la reconstrucción del caudal relicto, por lo que el caso requirió mucho esfuerzo y dedicación. Sostuvo, por último, que había preparado tres proyectos de escrituras públicas para inscribir los bienes adjudicados al menor y que, de considerarse que no existió un contrato de servicios profesionales, ella tenía derecho a que se le compensara bajo el principio de *quantum meruit*.

Designamos, como comisionado especial, al Lcdo. Agustín Mangual Hernández, para que en presencia de las partes recibiera la prueba y nos rindiera un informe con las determinaciones de hechos y recomendaciones pertinentes. Luego de varios trámites e incidentes procesales, la vista en su fondo se celebró el 8 de octubre de 2003. En la vista testificó por la parte querellante el Sr. Ángel Arroyo

---

[4] Según alegó la querellada, el menor obtuvo de la partición $126,000 en efectivo y tres inmuebles con un valor en el mercado de $130,000. Uno de los inmuebles tenía una hipoteca de $20,000 que sería cancelada por la Sucesión de Don Pedro Arroyo Pratts. La querellada nos señala que cobró el 25% usando como analogía la Ley Núm. 9 del 8 de agosto de 1974, 4 L.P.R.A. sec. 742, que se refiere al cobro de honorarios contingentes de abogados a los menores de edad en casos de daños y prejuicios.

Gajate, la Sra. Ana Rodríguez Candelario y el menor Alexis Arroyo Rodríguez. Por la parte querellada testificó la Lcda. Jelitza Vélez Quiñónez, el Lcdo. Dixon Cancel y la propia licenciada Rodríguez Mercado.

Luego de celebrada la vista, el 7 de noviembre de 2003, el Comisionado Especial Mangual rindió su informe. A continuación un resumen de las determinaciones de hechos conforme surgen del Informe del Comisionado Especial.[5]

Conforme las referidas determinaciones, el 24 de septiembre de 1994, la Sra. Ana Rodríguez Candelario y su hijo Alexis Arroyo fueron emplazados con copia de una demanda radicada en el Tribunal de Primera Instancia, Sala Superior de Mayagüez, por Ana I. Arroyo Morales contra la Sucesión de Don Pedro Germán Arroyo Prats en el caso IAC94-0492 sobre remoción de albacea. Alexis Arroyo es hijo de Don Angel Arroyo Gajate y de la Sra. Rodríguez Candelario y para esa fecha era menor de edad. El Sr. Arroyo Gajate y la Sra. Rodríguez no eran casados y esta última tenía la patria potestad y custodia de dicho menor.

Unos días después del emplazamiento, Rodríguez Candelario, Arroyo Gajate y el menor Alexis Arroyo visitaron la oficina de la querellada Lcda. Rebecca Rodríguez Mercado interesados en que ésta última asumiera la representación

_____

[5] Cabe destacar que en el informe del Comisionado Especial se limitó a señalar las determinaciones de hecho y no hace ninguna recomendación en relación a cuales fueron los Cánones de Ética Profesional que fueron violados por la licenciada Rodríguez Mercado. Resulta importante señalar que el Comisionado Especial expresó en su informe que las determinaciones de hecho se formularon a base de la preponderancia de la evidencia.

legal del menor en dicha demanda. La querellada aceptó la representación y preparó la contestación de la demanda, la cual se presentó el 1 de diciembre de 1994. No obstante lo anterior, la Sra. Rodríguez Candelario y la licenciada Rodríguez Mercado nunca otorgaron un contrato escrito de servicios profesionales ni  pactaron los honorarios de abogado a pagarse por la representación legal del menor.

La querellada comenzó a llevar a cabo el trabajo de investigación de la demanda que se le encomendó.[6] Surge de los autos del caso que luego que se radicaron las contestaciones a la demanda, se celebró una conferencia sobre el estado de los procedimientos el 28 de diciembre de 1994. Luego que los abogados presentaron sus respectivas posiciones, el tribunal le concedió a éstos hasta el 15 de febrero de 1995 para reunirse e informar por moción conjunta "que han hecho y qué van a hacer, para el tribunal disponer entonces, los procedimientos a seguir en el presente caso". Surge también, de la minuta de dicha reunión que los abogados acordaron reunirse el 9 de enero de 1995 en la oficina del licenciado Dixon Cancel.

Luego que las partes acordaran que la partición de herencia se haría extrajudicialmente, el 25 de mayo de 1995

---

[6] En el referido caso sobre remoción de albacea, el Lcdo. Norberto Cruz Arias representaba a los codemandados Magdalena y Angel Luis Arroyo Gallardo, el Lcdo. Dixon Cancel Mercado, representó al albacea testamentario Carlos E. Agrón Rivera, la Lcda. Evi Flor Lugo Carlo representaba a la demandante Ana I. Arroyo Morales, el Lcdo. Enrique Alcaraz Micheli a la codemandada Virginia Rivera López, el Lcdo. Mario Quintero Nadal a la codemandada Elizabeth Arroyo Gajate.

se radicó un Aviso de Desistimiento y de Allanamiento al Desistimiento firmado por todos los abogados del pleito. El tribunal de instancia, luego de considerar dicha moción, dictó una sentencia de Archivo por Desistimiento el 9 de junio de 1995. Mientras tanto, los abogados de las partes habían estado reuniéndose en la oficina del Lcdo. Dixon Cancel Mercado con el propósito de intercambiar información sobre las propiedades y los bienes dejados por el causante, Sr. Pedro Arroyo Pratts, para poder efectuar la partición de la herencia.

Con posterioridad a ser dictada la sentencia de archivo por desistimiento, a solicitud de la querellada, la Sra. Ana Mercedes Rodríguez Candelario compareció a la oficina de ésta. La querellada le informó que se había realizado una partición de la herencia por lo que había un dinero para distribuir y que a su hijo se le habían asignado $126,000 del dinero en efectivo, que trajo a su oficina el albacea testamentario, Agrón Rivera, y que además le correspondían a dicho menor, tres propiedades inmuebles para un gran total de $256,000. La querellada <u>retuvo</u> $64,000 del efectivo <u>y le dijo, en ese momento, que ella cobraba honorarios contingentes en el 25% del total de lo que se recibió</u>. La licenciada Rodríguez Mercado le hizo firmar a la madre del menor un recibo por los $62,000 en efectivo restantes.

Las mencionadas propiedades inmuebles aparecían inscritas en el Registro de la Propiedad a nombre de Doña Elizabeth Arroyo Gajate, tía de dicho menor, <u>pero la abogada</u>

nunca hizo las gestiones para inscribirlas a nombre del menor. A la fecha de la vista ante el Comisionado Especial, todavía dos de dichas propiedades aparecen inscritas a nombre de la antes mencionada persona.

Según declaró la querellada, no existe documento alguno acreditativo de las negociaciones llevadas a cabo entre las partes y tampoco se preparó documento público alguno sobre dicha distribución parcial de la herencia. Según el testimonio de la querellada, el expediente del caso alegadamente se arruinó, en su oficina, por la lluvia que produjo el huracán George que pasó por Puerto Rico en septiembre de 1998.

Luego de que el padre de dicho menor, el Sr. Angel Arroyo Gajate se enteró que la querellada había cobrado $64,000 por su labor, visitó la oficina de ésta para quejarse porque consideraba que dicha cantidad era excesiva. Al no poder llegar a un acuerdo, Arroyo Gajate más tarde radicó una queja ante el Colegio de Abogados de Puerto Rico. Una vez presentada la queja, la licenciada Rodríguez Mercado dio por terminada la relación profesional con la Sra. Ana Mercedes Rodríguez Candelario y su hijo menor.

En virtud del informe anteriormente expuesto, el 15 de febrero de 2005, la parte querellada presentó su posición sobre el informe del Comisionado Especial. La querellada alegó, en síntesis, que el Comisionado Especial erró al utilizar un estándar de prueba inaplicable a los procedimientos disciplinarios. En específico, señaló que el

Comisionado Especial basó sus determinaciones de hecho en el estándar de "preponderancia de la prueba" en vez de utilizar el de "prueba clara, robusta y convincente". Asimismo, señaló que erró el comisionado Especial al no hacer determinaciones de hecho en torno a los trabajos que realizó la querellada en beneficio de su representado y los gastos que incurrió en la consecución del mismo, los cuales justificaban los honorarios que ella cobró.

Evaluada la querella presentada por el Colegio de Abogados de Puerto Rico, el Informe del Comisionado Especial, la posición de la querellada y la prueba documental que obran en el expediente del caso, nos encontramos en posición de resolver el asunto ante nos.

I

Debemos atender en primer lugar el planteamiento de la querellada a los efectos que el Comisionado Especial en sus determinaciones de hechos utilizó un estándar de prueba inaplicable a los procedimientos disciplinarios. En específico, ésta señala que el Comisionado Especial utilizó el estándar de preponderancia de la prueba y no el de prueba clara, robusta y convincente.

De entrada debemos señalar que este Tribunal no está obligado a aceptar el informe del Comisionado Especial, por lo que puede, adoptar el mismo, modificarlo e, inclusive, rechazarlo. _In re_ López de Victoria Brás, 135 D.P.R. 688 (1994); Vélez Ruiz v. E.L.A, 111 D.P.R. 752 (1981); _In re_

Soto López, 135 D.P.R. 642 (1994). Es por ello, que cuando las determinaciones de hechos de un Comisionado Especial se basan en un criterio de prueba erróneo, ni podemos ni debemos estar obligados por ellas. En tales circunstancias es nuestro deber reevaluar la prueba a tenor de los criterios correctos y hacer las determinaciones que sean procedentes. P.P.D. v. Admor. General de Elecciones, 111 D.P.R. 199 (1981).

En cuanto a la carga probatoria requerida en un proceso disciplinario, es correcto que en *In re* Caratini Alvarado, res. el 9 de marzo de 2001, 2001 T.S.P.R. 46, resolvimos que el criterio a utilizarse en esta clase de casos es el de prueba "clara, robusta y convincente", no afectada por reglas de exclusión ni a base de conjeturas. Requerimos una carga probatoria más acuciosa que la mera preponderancia de la prueba toda vez que en estos procesos está en juego el título de un abogado y, por ende, su derecho fundamental a ganarse su sustento. *Ibíd*. Es de notar, sin embargo, que en estos casos no se requiere el criterio más riguroso utilizado en el campo de lo penal. Sabido es que el hecho de que un miembro de la profesión de abogado sea declarado inocente de unos cargos criminales --por no haberse podido demostrar su culpabilidad más allá de toda duda razonable-- no impide que contra dicho abogado se radique una querella por conducta profesional, en relación con los mismos hechos que dieron lugar a la acción penal, y que éste sea

sancionado o disciplinado por este Tribunal. *In re Caratini Alvarado*, ante; *In re* Soto López, 135 D.P.R. 642 (1994).

Conforme a lo anterior, podemos concluir que la prueba clara robusta y convincente es aquélla mucho más sólida que la preponderancia de la evidencia, pero menos rigurosa que la prueba más allá de toda duda razonable. Aunque el referido estándar de prueba no es susceptible de una definición precisa, la prueba clara, robusta y convincente ha sido descrita como aquella evidencia que produce en un juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables. Véase: Colorado v. New Mexico, 467 U.S. 310, 316 (1983); Buildex, Inc. v. Kason Indus., Inc., 849 F. 2d 1461, 1463 (Fed. Cir. 1988); Price v. Symseck, 988 F. 2d 1187, 1191 (Fed. Cir. 1993). Véase también: McCormick on evidence, 5ta ed., Vol. 2, § 340 pág. 425 (1999).

En el presente caso el Comisionado Especial expresó en su informe que sus determinaciones de hecho fueron formuladas a base de la preponderancia de la prueba. Aunque, éste erró al así actuar, un examen desapasionado y cuidadoso de todo el expediente de este caso, incluyendo la transcripción de la evidencia, las declaraciones y otros documentos, demuestra que las determinaciones de hecho del Comisionado Especial están ampliamente sostenidas por prueba clara, robusta y convincente. Procede, entonces, que examinemos la conducta de la licenciada Rodríguez Mercado a la luz de los Cánones de Ética Profesional.

II

Como es sabido el contrato de servicios profesionales de abogado se considera una variante del contrato de arrendamiento de servicios. Artículo 1434 del Código Civil, 31 L.P.R.A. sec. 4013. Es un contrato propio de los de prestación de servicios de las profesiones y artes liberales. J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. II, pág. 450. No obstante, por estar revestido de un alto contenido ético, el contrato de servicios profesionales de abogado es de naturaleza *sui generis* que lo distingue de los típicos contratos de arrendamiento de servicios. Nassar Rizek v. Hernández, 123 D.P.R. 360 (1989); Colón v. All Amer. Life & Cas. Co., 110 D.P.R. 772 (1981).

A tono con lo anterior, al iniciar una gestión profesional, todo abogado y abogada debe tener presente el Canon 24 de Ética Profesional, 4 L.P.R.A. Ap. IX, ya que en éste se expresa las normas generales que deben regir en la fijación de honorarios de abogado. A esos efectos, el Canon 24 de Ética Profesional, ante, nos indica que la fijación de honorarios profesionales deberá regirse siempre por el principio deontológico que la profesión legal es parte "de la administración de la justicia y no un mero negocio con fines de lucro."

De igual forma, el referido Canon establece que es deseable que el acuerdo o pacto sobre honorarios a ser cobrados sea reducido a escrito. *Ibíd*. Hemos resuelto que en

aquellos casos en que no sea anticipable de un todo al inicio de la gestión profesional la extensión y valor de los honorarios, el abogado deberá reducir a escrito el acuerdo con la mayor claridad en sus términos, libre de ambigüedades y haciendo constar las contingencias previsibles que pudieran surgir durante el transcurso del pleito o del asunto que se atiende a nombre del cliente. Pérez v. Col. Cirujanos Dentista de P.R., 132 D.P.R. 545 (1992); Ramírez Segal & Látimer v. Rojo Rigual, 123 D.P.R. 161 (1989); Colón v. All Amer. Life & Cas. Co., *ante*.

Así, en Ramírez Segal & Látimer, *ante*, a la pág. 173, específicamente indicamos que, "tanto los cánones de ética profesional como la jurisprudencia indican que la mejor práctica la constituye el acordar, por escrito y con claridad, los honorarios y designar una cantidad fija o una fórmula para computarla o determinarla." Véase, Cánones 24 y 25 de Ética Profesional, 4 L.P.R.A. Ap. IX; Colón v. All Amer. Ins. & Cas. Co., *ante*. Una vez reducido a escrito, se minimizan, necesariamente, las controversias con los clientes sobre el monto de la compensación por servicios prestados. Méndez v. Morales, *ante.*

De otro lado, el abogado tiene derecho a recibir una compensación razonable por los servicios que rinde a sus clientes. Pérez v. Col. Cirujanos Dentistas, *ante*; Rodríguez v. Ward, 74 D.P.R. 880 (1953). Conforme a ello, cabe señalar que en ausencia de un pacto expreso sobre la cuantía que debe ser cobrada por los servicios

profesionales, aplica el Artículo 1473 del Código Civil, 31 L.P.R.A. sec. 4118, el cual establece, en lo pertinente:

> ... En cuanto a los servicios profesionales, se estará, para la remuneración de los mismos, a lo convenido entre las partes; cuando no hubiere convenio y surgieren diferencias, la parte con derecho a la remuneración podrá reclamar y obtener en juicio de la otra parte, ... el importe razonable de dichos servicios.

Conforme a la referida disposición estatutaria, en nuestro ordenamiento se reconoce la máxima legal *quantum meruit* que significa: "[t]anto como se merece"; es el derecho a reclamar el valor razonable de los servicios prestados. I. Rivera García, Diccionarios de Términos Jurídicos, 2da ed. rev. New Hamphire, Ed. Equity Publishing Corp., pág. 425; Rodríguez v. Ward, 74 D.P.R. 880 (1953); Zequeira v. C.R.U.V., 83 D.P.R. 878 (1961).

III

En el presente caso, conforme a las determinaciones de hecho del Comisionado Especial, la Sra. Ana Rodríguez, el Sr. Ángel Arroyo Gajate y su hijo menor Alexis Arroyo visitaron la oficina de la licenciada Rodríguez Mercado, interesados en que ésta asumiera la representación legal del menor en un pleito ante el Tribunal de Primera Instancia, Sala Superior de Mayagüez, de remoción de albacea. La licenciada Rodríguez Mercado aceptó la representación legal del menor sin otorgar un contrato escrito de servicios profesionales. Tampoco se acordó verbalmente los honorarios

que la licenciada Rodríguez Mercado iba a cobrar por sus servicios.[7]

Luego que se transigiera el pleito de remoción de albacea, la querellada se comunicó con la madre del menor para que pasara por su oficina. Allí le informó de la transacción realizada. Sin dar explicación alguna sobre las gestiones que había efectuado, le entregó a la madre la cantidad de $62,000 y le informó que ella retenía $64,000 porque ella cobraba honorarios contingentes del 25% del total de los bienes que recibiera el menor en la partición de herencia.

De todo lo antes expuesto surge con mediana claridad que la licenciada Rodríguez Mercado violó el Canon 24, ante. En casos como el de autos, donde no era anticipable del todo la extensión de los honorarios, la licenciada Rodríguez Mercado debió haber reducido a escrito el acuerdo sobre honorarios, para así evitar confusión y discrepancias con su cliente. Méndez v. Morales, ante. De igual forma, resulta sorprendente y preocupante que la licenciada Rodríguez haya

_____

[7] Queremos señalar que aunque la querellada sostuvo que ella le había dicho a la madre del menor que iba cobrar honorarios contingentes en el 25%, la realidad es que el Comisionado Especial no le creyó.

Por lo tanto, el Comisionado Especial adjudicó expresamente la cuestión de credibilidad, descartando la versión de la querellada, y ésta no ha presentado nada ante nos que demuestre que hubo prejuicio, parcialidad o error manifiesto en dicha determinación. Reiteradamente hemos resuelto que el Comisionado Especial es el que está en mejor posición para aquilatar la prueba testifical y que sus determinaciones merecen la mayor deferencia por parte de este Tribunal. In re Morales Soto, 134 D.P.R. 1012 (1994).

cobrado sus honorarios sin explicarle a su cliente cuales fueron las gestiones que se hicieron.

Resolvemos, además, que los honorarios cobrados por la licenciada Rodríguez Mercado son excesivos. La querellada no ha sometido documento alguno que sostenga la razonabilidad de dichos honorarios; tememos, además, que ésta no completó su trabajo ya que nunca hizo las gestiones para traspasar los bienes inmuebles a nombre del menor.[8]

La querellada, por su parte, sostiene que dichos honorarios son razonables toda vez que como muchos de los bienes del causante no estaban a nombre de éste, tuvo que emplear más de 1,900 horas de trabajo por alrededor de seis meses para lograr la reconstrucción del caudal relicto, por lo que el caso de partición de herencia requirió mucho esfuerzo y dedicación. No le asiste la razón.

El Comisionado Especial reconoció en sus determinaciones de hecho, que la licenciada Rodríguez Mercado sí trabajó tanto en el caso de remoción de albacea como en la partición que se llevó a cabo extrajudicialmente. Lo que sucede es que al día de hoy la licenciada Rodríguez Mercado no ha aportado prueba detallada que acredite específicamente los trabajos que ella realizó ni tampoco los gastos en que incurrió como abogada del menor. Ciertamente ante la falta de prueba, el Comisionado Especial no podía hacer determinaciones específicas sobre los trabajos

---

[8] Conforme a las determinaciones de hecho, a la fecha de la vista ante el Comisionado Especial, todavía dos de dichas propiedades no están a nombre del menor.

realizados por la querellada en beneficio de su cliente y todos los gastos en que incurrió.

Realmente nos resulta increíble que la querellada sostenga que trabajó 1,900 horas en un período de seis meses en un caso de partición de herencia extrajudicial. Con una simple operación matemática podemos notar que si la contención de la querellada fuera cierta, entonces, ésta en seis meses (aproximadamente 26 semanas) trabajó <u>todos</u> los días un promedio aproximado de diez horas diarias (los siete días de la semana) <u>solamente</u> en este caso. "Los jueces no debemos, después de todo, ser tan inocentes como para creer declaraciones que nadie más creería." <u>Pueblo</u> v. <u>Luciano Arroyo</u>, 83 D.P.R. 573 (1961).

La querellada alega, por otro lado, que no ha presentado ningún documento que acredite los trabajos realizados porque los mismos se arruinaron por la lluvia que produjo el Huracán George que pasó por Puerto Rico en septiembre de 1998. <u>Sin embargo</u>, la queja que inició este procedimiento disciplinario fue presentada en el Colegio de Abogados el 27 de julio de 1995 y la vista ante la Comisión de Ética Profesional fue el 21 de mayo de 1996; <u>esto es, mucho antes del paso por Puerto Rico del mencionado huracán</u>.

¿Por qué la licenciada Rodríguez Mercado no presentó en la vista ante la Comisión de Ética estos documentos que supuestamente acreditaban las gestiones que ella realizó en el caso y que sostienen la razonabilidad de los honorarios cobrados? La contestación es obvia; al igual que el

Comisionado Especial, tenemos que concluir que dichos documentos nunca existieron.

En vista de esta situación, entendemos que, al amparo del *quantum meruit*, $10,000 son honorarios razonables por los trabajos realizados por la licenciada Rodríguez Mercado. En virtud de lo anterior, entendemos procedente que la licenciada Rodríguez Mercado le devuelva a Alexis Arroyo Rodríguez la cantidad de $54,000. Así se lo ordenamos.

IV

Lo anterior, sin embargo, no dispone del todo del caso ante nuestra consideración. Nos preocupa sobremanera el proceder de la licenciada Rodríguez Mercado en el momento en que ella cobró lo que ella entendía que eran sus honorarios; esto es, al retener la cantidad de $64,000 del dinero del menor. Este Tribunal, en un sinnúmero de ocasiones, ha expresado que esta forma de proceder es violatoria del Canon 23 del Código de Ética Profesional, ante.

El referido Canon 23, ante, dispone, en lo pertinente, que:

> ...La naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta. En particular, debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen.

Conforme al referido Canon, los abogados deben velar porque la relación abogado cliente sea en todo momento transparente. *In re* Álvarez Aponte, res. el 19 de septiembre

de 2002, 2002 T.S.P.R. 125; *In re* Rivera Irizarry, res. el 21 de noviembre de 2001, 2001 T.S.P.R. 159. Su naturaleza fiduciaria exige que exista una confianza y una absoluta honradez entre el abogado y el cliente, especialmente en los asuntos de carácter económico.[9] *Ibíd*.

Reiteradamente hemos expresado que "la confianza entre abogado y cliente, en particular, el escrupuloso manejo de fondos, constituye elemento inseparable que se proyecta no sólo dentro del foro togado puertorriqueño, sino en el respeto y la estima ante la imagen pública". *In re* Fernández Paoli, 141 D.P.R. 10 (1996) *In re* Félix, 111 D.P.R. 671, 674 (1981). Véase: *In re* Báez Torres, 108 D.P.R. 358 (1979).

De esta manera, el abogado debe rendir cuentas de cualquier dinero o bienes de un cliente que esté en su posesión porque "[l]a retención de cualquier cantidad de dinero, perteneciente a sus clientes, trastoca e infringe los postulados del Canon 23 de Ética Profesional, ante, y demuestra un menosprecio hacia sus deberes como abogado." Véase: *In re* Rivera Irizarry, ante. (Citas omitidas.)

Sabido es que, la mera retención por un abogado de fondos pertenecientes a un cliente justifica una sanción, independientemente de que el abogado los hubiera devuelto y de que los hubiera retenido sin intención de apropiárselos. *In re* Rivera Irizarry, ante; *In re* Feliciano Rodríguez, 150

---

[9] Hemos reiterado que las relaciones entre un abogado y su cliente son de naturaleza fiduciaria y están fundadas en la honradez absoluta. *In re* Pereira Esteves, 131 D.P.R. 515 (1992); *In re* Rivera Carmona, 114 D.P.R. 390 (1983).

D.P.R. 859 (2000). En efecto, "la dilación en la devolución de los fondos es causa suficiente para tomar medidas disciplinarias contra el abogado." *In re Rivera Irizarry*, ante, pág. 437; *In re* Feliciano Rodríguez, ante, pág. 1079.

En *In re Fernández Paoli*, 141 D.P.R. 10 (1996), expresamos que, aun cuando un cliente hubiese pactado pagarle al abogado sus honorarios tan pronto se recibiera una suma sustancial del caso en que lo representa, ello no implica que el abogado, sin el consentimiento del cliente, puede cobrar los honorarios por su cuenta. Véase, además, *In re Morales Soto*, 134 D.P.R. 1012 (1994).

En mérito de lo anteriormente expuesto, la licenciada Rodríguez Mercado no podía retener, de la suma obtenida por el menor en la partición de herencia, la cuantía correspondiente a sus honorarios. Al actuar de ese modo, mancilló la imagen de la clase togada y violentó el deber fiduciario que debe existir en toda relación abogado-cliente. Dicho lo anterior, concluimos que la querellada infringió el Canon 23, ante, al así actuar.

En casos análogos ya antes habíamos resuelto que tal actuación constituye conducta gravemente impermisible de un abogado. *In re Maldonado Soto*, 83 D.P.R. 444 (1961). Véase también: *In re* Cardona Vázquez, 108 D.P.R. 6 (1978); *In re Félix*, 111 D.P.R. 671 (1981); *In re Vázquez O´neill*, 121 D.P.R. 623 (1988). Como es sabido en nuestra jurisdicción un abogado no tiene derecho de retención o gravamen (attorney´s lien) sobre el dinero que recibe del cliente en un caso,

para satisfacer los honorarios que se le adeudan. *In re* *Vélez*, 103 D.P.R. 590, 599 (1975).

V

Por los fundamentos antes expresados, procede decretar la suspensión de Rebecca Rodríguez Mercado del ejercicio de la abogacía y de la notaría en nuestra jurisdicción por el término de dos (2) meses.

Habiendo cobrado honorarios en exceso, se instruye a Rebecca Rodríguez Mercado para que, de manera inmediata, proceda a devolverle a Alexis Arroyo Rodríguez la suma de $54,000 y a acreditarnos ese hecho mediante escrito al efecto.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Rebecca Rodríguez Mercado                    CP-2002-7

SENTENCIA

San Juan, Puerto Rico, a 15 de septiembre de 2005

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia decretando la suspensión de Rebecca Rodríguez Mercado del ejercicio de la abogacía y de la notaría en nuestra jurisdicción por el término de dos (2) meses, a partir de la notificación de la presente Opinión y Sentencia.

Habiendo cobrado honorarios en exceso, se instruye a Rebecca Rodríguez Mercado para que, de manera inmediata, proceda a devolverle a Alexis Arroyo Rodríguez la suma de $54,000 y a acreditarnos ese hecho mediante escrito al efecto.

Le imponemos a ésta el deber de notificar a todos sus clientes de su presente inhabilidad de seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados, e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del País. Deberá, además, certificarnos dentro del término de treinta (30) días a partir de su notificación el cumplimiento de estos deberes, notificando también al Procurador General.

La Oficina del Alguacil de este Tribunal procederá, de inmediato, a incautarse de la obra notarial de Rebecca Rodríguez Mercado, incluyendo su sello notarial, luego de lo cual entregará la misma a la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Fiol Matta no intervino.


                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo