EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Lcdo. Luis E. Delannoy Solé | 2007 TSPR 164 <br><br> 172 DPR _____ |

Número del Caso: CP-2002-14

Fecha: 27 de agosto de 2007

Oficina del Procurador General:

                Lcda. Minnie H. Rodríguez López
                Procuradora General Auxiliar

Abogado de la Parte Querellada:

                Lcdo. Andrés Díaz Nieves

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Lcdo. Luis E. Delannoy Solé          CP-2002-14

PER CURIAM

San Juan, Puerto Rico, a 27 de agosto de 2007.

I

El Lcdo. Luis E. Delannoy Solé (en adelante el licenciado Delannoy Solé) fue admitido al ejercicio de la abogacía y de la notaría los días 19 de mayo y 19 de junio del año 1975, respectivamente.

En respuesta a una queja instada por la señora Gladys Mendoza Vicente (en adelante la señora Mendoza Vicente o la quejosa), el 18 de octubre de 2002, mediante una resolución a esos efectos, instruimos al Procurador General de Puerto Rico para que presentara una querella en contra del licenciado Delannoy Solé. El Procurador General de Puerto Rico, en cumplimiento de nuestra orden, presentó la correspondiente querella el 9 de diciembre de 2002,

en la que le formuló dos cargos al licenciado Delannoy Solé. En el primer cargo le imputó haber violentado el Canon 24 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX C. 24, al no acordar los honorarios de abogado que cobraría en el procedimiento de liquidación de la sociedad de bienes gananciales de la señora Mendoza Vicente. Además, en el segundo cargo, le imputó una violación al Canon 23 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX C. 23, al retener indebidamente un cheque a favor de la señora Mendoza Vicente con el propósito de ir junto con ella a cambiarlo para así poder cobrar sus honorarios. El licenciado Delannoy Solé presentó su contestación a la querella el 3 de enero de 2003.

El 31 de enero de 2003 nombramos a la Honorable Ygrí Rivera de Martínez, ex jueza del anterior Tribunal de Circuito de Apelaciones, para que, en presencia de las partes, fungiera de Comisionada Especial, recibiera la prueba pertinente y nos rindiera un informe con sus determinaciones de hecho y recomendaciones de derecho. Concluida la encomienda, la Comisionada Especial presentó su informe el 28 de febrero de 2005.

El caso quedó sometido para nuestra consideración el 15 de abril de 2005. Pasamos a resolver.

II

A continuación, exponemos los acontecimientos según surgen de las determinaciones de hecho del Informe de la Comisionada Especial.

La relación profesional entre el licenciado Delannoy Solé y la señora Mendoza Vicente comenzó en agosto de 1997, cuando ésta procuró los servicios profesionales del licenciado para tramitar su divorcio. En aquel momento pactaron verbalmente que el licenciado Delannoy Solé recibiría $300 por cada vista ante el Tribunal de Primera Instancia. Los honorarios finales ascendieron a $2,500, suma que la señora Mendoza Vicente pagó en su totalidad. Terminado el pleito de divorcio, la señora Mendoza Vicente volvió a requerir los servicios del licenciado Delannoy Solé, esta vez para la liquidación de la sociedad legal de bienes gananciales. Aunque entre el licenciado Delannoy Solé y la señora Mendoza Vicente nunca se redactó un contrato de honorarios de abogado, el licenciado le informó a la quejosa que para este tipo de casos él acostumbraba pactar honorarios contingentes que fluctuaban entre el diez y el quince por ciento de la participación que se le adjudicara finalmente a su representado. La señora Mendoza Vicente, entonces, adelantó $300 para los gastos iniciales del proceso.

El licenciado Delannoy Solé hizo los arreglos pertinentes para la presentación de la demanda y otras comparecencias escritas; representó a la señora Mendoza Vicente en dos vistas ante el Tribunal de Primera Instancia, Sala Superior de Carolina; realizó varias gestiones para identificar los activos y pasivos pertenecientes a la sociedad legal de bienes gananciales; defendió los intereses de la señora Mendoza Vicente en

cuanto a créditos que ésta ostentaba frente a la sociedad y frente a alegaciones sobre el carácter privativo de ciertas propiedades. Los esfuerzos y la labor del licenciado Delannoy Solé culminaron en una estipulación firmada por los ex esposos, correspondiéndole a la quejosa la suma de $91,997.

El 10 de enero de 2002 llegó a la oficina del licenciado Delannoy Solé un cheque por la cantidad de $15,445 a favor de la quejosa. La secretaria del licenciado se comunicó con la señora Mendoza Vicente para informarle sobre este hecho y le propuso que pasara por la oficina al día siguiente para recoger el mismo e ir con el licenciado Delannoy Solé a cambiarlo, para así éste cobrar sus honorarios. Al inquirir sobre el monto de éstos, la señora Mendoza Vicente se enteró de que ascendían a $8,000, suma que le pareció excesiva por el trabajo realizado. Así se lo hizo saber al licenciado, quien se mantuvo firme en cuanto a que los honorarios acordados habían sido entre el diez y el quince por ciento de lo adjudicado en la división ganancial. Expresó el licenciado que la cifra solicitada era, incluso, menor al equivalente del diez por ciento de la participación adjudicada a la quejosa en la división de la extinta sociedad legal de bienes gananciales. Surgieron discrepancias entre la señora Mendoza Vicente y el licenciado Delannoy Solé y, aunque varias veces acordaron ir al banco para cambiar el cheque, nunca se concretó la visita, pues las diferencias subsistían.

Así las cosas, el 16 de enero de 2002 el licenciado Delannoy Solé le cursó una misiva a la señora Mendoza Vicente en la que le informó que el 7 de diciembre de 2001 había presentado ante el foro de instancia una moción para que dictara sentencia basándose en la estipulación de los ex esposos. En esta carta le indicó, además, que tomando en consideración el total de activos que había obtenido en virtud de la estipulación, sus honorarios ascendían a $9,199, es decir, el diez por ciento de los activos que le fueron adjudicados. El Tribunal de Primera Instancia aprobó la estipulación de los ex esposos y dictó una sentencia a esos efectos.

En forma paralela, debido a que el licenciado Delannoy Solé continuaba en posesión del cheque a favor de la señora Mendoza Vicente y ante la poca probabilidad de que las diferencias entre ambos se sosegaran, esta última solicitó al librador del cheque que requiriese una suspensión de pago para que el mismo no pudiera cambiarse. Así se hizo el 24 de enero de 2002. La señora Mendoza Vicente, además, instó la queja que dio curso al presente procedimiento disciplinario.

El 14 de marzo de 2002 el licenciado Delannoy Solé presentó, ante la Sala Superior de Carolina del Tribunal de Primera Instancia, una demanda en cobro de dinero en contra de la señora Mendoza Vicente. El licenciado exigió el pago de $9,199 por los servicios profesionales a los cuales ya hemos hecho referencia. La señora Mendoza Vicente, por su parte, presentó una reconvención en la que alegó que el

licenciado se había apropiado ilegalmente de un cheque de su pertenencia por la cantidad de $15,445. Arguyó, también, que había sufrido constantes humillaciones por parte del licenciado Delannoy Solé y que éste fue negligente en el manejo de su caso, razón por la cual reclamó $50,000 por daños emocionales. La señora Mendoza Vicente, al mismo tiempo que ocurrían estos eventos, presentó una petición para acogerse a los beneficios que provee el Código Federal de Quiebras.

Luego de diversos incidentes en los casos ante la Corte de Quiebras de Estados Unidos para el Distrito de Puerto Rico y el foro de instancia, el licenciado Delannoy Solé y la señora Mendoza Vicente llegaron a un acuerdo en el que ésta se comprometió a pagar al primero $5,000 por concepto de los honorarios adeudados. La Corte de Quiebras acogió el acuerdo y dictó una sentencia a esos efectos el 28 de octubre de 2003. Por su parte, el Tribunal de Primera Instancia dictó una sentencia en la que aceptó el desistimiento con perjuicio de las causas ante su consideración.

Fundamentándose en las determinaciones de hecho anteriormente reseñadas, la Comisionada Especial entendió que el licenciado Delannoy Solé había incurrido en la conducta que le atribuyera el Procurador General. En esencia, determinó que el licenciado Delannoy Solé no había reducido a escrito el acuerdo de honorarios con la señora Mendoza Vicente, y que luego había retenido indebidamente un cheque de ésta. Enfatizó, sin embargo, que la retención

del cheque no fue con la finalidad de apropiarse del mismo, sino con el propósito de acompañar a la quejosa a cambiarlo para así poder cobrar los honorarios adeudados.

III

En nuestra jurisdicción, está firmemente establecido que el contrato de servicios legales es un contrato *sui generis*. Esto porque, aunque se trata de un contrato de arrendamiento de servicios profesionales al amparo del artículo 1473 del Código Civil, 31 L.P.R.A. sec. 4111, el contrato de servicios legales está regido por las consideraciones éticas relativas a la profesión legal. Nassar Rizek v. Hernández, 123 D.P.R. 360, 369 (1989); Méndez v. Morales, 142 D.P.R. 26, 33 (1996).

Cónsono con lo anterior, el Canon 24 de Ética Profesional establece lo referente a la fijación de honorarios de abogados. Dispone, específicamente, que "[l]a fijación de honorarios profesionales debe regirse siempre por el principio de que nuestra profesión es una parte integrante de la administración de la justicia y no un mero negocio con fines de lucro". 4 L.P.R.A. Ap. IX C. 24. Aconseja, además, que el abogado y el futuro cliente lleguen a un acuerdo sobre los honorarios por servicios profesionales al inicio de la relación profesional, y que éste se reduzca a escrito. *Id.* "[T]anto los cánones de ética profesional como la jurisprudencia, indican que la mejor práctica la constituye el acordar, por escrito y con claridad, los honorarios y designar una cantidad fija o una

fórmula para computarla o determinarla". Ramírez, Segal & Látimer v. Rojo Rigual, 123 D.P.R. 161, 173 (1989).

Es evidente que plasmar por escrito los acuerdos sobre honorarios profesionales es una precaución cada vez más necesaria, tanto para el beneficio de la ciudadanía que procura servicios legales, como para el beneficio de los abogados y de la imagen de la profesión. Ello, porque reducir el acuerdo sobre honorarios a escrito disminuye significativamente las posibilidades de desavenencias entre los abogados y sus clientes.

Por otro lado, el Canon 23 del Código de Ética Profesional, sobre la adquisición por parte del abogado de intereses en litigio y el manejo de los bienes del cliente, caracteriza las relaciones entre abogado y cliente como de naturaleza fiduciaria. Por esta razón, el Canon referido requiere explícitamente "que éstas estén fundadas en la honradez absoluta". 4 L.P.R.A. Ap. IX C. 23. Exige al abogado, además, dar "pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no [] mezclarlos con sus propios bienes ni permitir que se mezclen". *Id.* Ya antes hemos manifestado que "la confianza entre abogado y cliente, en particular, el escrupuloso manejo de fondos, constituye elemento inseparable que se proyecta no sólo dentro del foro togado puertorriqueño, sino en el respeto y la estima ante la imagen pública". *In re* Fernández Paoli, 141 D.P.R. 10, 16 (1996) y casos allí citados.

Según el propio texto del Canon 23, y en virtud de la confianza que enmarca la relación, el abogado tiene la obligación de rendir cuentas al cliente sobre cualquier dinero o bienes de este último que estén en su posesión. *In re* Rodríguez Mercado, res. 15 de septiembre de 2005, 165 D.P.R. ___, 2005 TSPR 144, 2005 JTS 149. Por esta razón, repetidamente hemos resuelto que la retención por parte del abogado de cualquier cantidad de dinero perteneciente al cliente es violatoria del Canon 23 de Ética Profesional. Esto es así independientemente de que la retención sea sin ánimos de apropiación. Es decir, la mera dilación innecesaria en la entrega es suficiente para infringir el Canon 23. *In re* Rodríguez Mercado, *supra*; *In re* Rivera Irizarry, 155 D.P.R. 687, 693 (2001); *In re* Vázquez O'Neill, 121 D.P.R. 623, 628 (1988); *In re* Arana Arana, 112 D.P.R. 838, 844 (1982). Tal actuación por parte de un abogado demuestra menosprecio a sus deberes. *In re* Rivera Irizarry, *supra*.

Consideramos, en mérito de lo antes expuesto y de los hechos probados ante la Comisionada Especial, que el licenciado Delannoy Solé, dentro de su relación con la señora Mendoza Vicente para el caso de división de los bienes gananciales, faltó a los deberes impuestos por los Cánones 23 y 24 del Código de Ética Profesional. Delannoy Solé no detalló por escrito el acuerdo sobre los honorarios que cobraría por sus servicios, ni puntualizó de forma específica la cantidad que cobraría o la fórmula para computarla, pues sólo informó previamente a la cliente que

él acostumbraba cobrar entre un diez a un quince por ciento de la participación que finalmente se le adjudicara, sin precisar cuánto exigiría concretamente. Entendemos que este proceder no es cónsono con las normas del Canon 24 de Ética Profesional. De igual modo, estimamos que, al retener el cheque dirigido a la señora Mendoza Vicente, el licenciado Delannoy Solé transgredió los deberes impuestos por el Canon 23 de Ética Profesional. Sus actuaciones vulneraron la confianza y transparencia que debe regir las relaciones entre los abogados y sus clientes.

Esto no obstante, no podemos soslayar que el licenciado Delannoy Solé ha gozado de buena reputación dentro de nuestra profesión por más de treinta años y que durante ese período nunca se había enfrentado a un procedimiento disciplinario. Tampoco podemos obviar que realizó con esmero las tareas para las cuales fue contratado y que nunca se pudo probar que su desempeño fuera deficiente. Además, es menester tener presente que el licenciado Delannoy Solé y la señora Mendoza Vicente llegaron, a final de cuentas, a una estipulación sobre los honorarios que recibiría el primero, y que esta estipulación fue aprobada por el Tribunal de Primera Instancia y por la Corte de Quiebras. Finalmente, debemos destacar que el licenciado Delannoy Solé aceptó los hechos que se le imputaron, y que durante el procedimiento se mostró arrepentido y apesadumbrado por su conducta.

IV

Por todo lo anterior, resolvemos que el licenciado Delannoy Solé no observó cabalmente lo requerido por los Cánones 23 y 24 de Ética Profesional. Lo amonestamos por sus actuaciones que, por no estar a la altura de lo que se espera de la profesión legal, no contribuyen a mantener su buen nombre. Lo apercibimos que de repetirse en un futuro la conducta que dio curso a la presente querella, seremos más severos en nuestra sanción.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Lcdo. Luis E. Delannoy Solé          CP-2002-14

SENTENCIA

San Juan, Puerto Rico, a 27 de agosto de 2007.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte de la presente Sentencia, se resuelve que el Lcdo. Luis E. Delannoy Solé no observó cabalmente lo requerido por los Cánones 23 y 24 de Ética Profesional.

Se amonesta al licenciado Delannoy Solé por sus actuaciones que, por no estar a la altura de lo que se espera de la profesión legal, no contribuyen a mantener su buen nombre.

Se le apercibe que de repetirse en un futuro la conducta que dio curso a la presente querella, seremos más severos en nuestra sanción.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo