PER CURIAM:
I
El Ledo. Luis E. Delannoy Solé (licenciado Delannoy Solé) fue admitido al ejercicio de la abogacía y de la notaría el 19 de mayo y 19 de junio de 1975, respectivamente.
En respuesta a una queja instada por la Sra. Gladys Mendoza Vicente (señora Mendoza Vicente o quejosa), el 18 de octubre de 2002, mediante una resolución a esos efectos, instruimos al Procurador General de Puerto Rico para que presentara una querella contra el licenciado Delannoy Solé. El Procurador General de Puerto Rico, en cumpli-miento de nuestra orden, presentó la querella correspon-diente el 9 de diciembre de 2002, en la que le formuló dos cargos al licenciado Delannoy Solé. En el primer cargo le imputó haber violado el Canon 24 del Código de Etica Pro-fesional, 4 L.P.R.A. Ap. IX, al no acordar los honorarios de abogado que cobraría en el procedimiento de liquidación de la Sociedad de Bienes Gananciales de la señora Mendoza Vicente. Además, en el segundo cargo, le imputó una viola- *98 ción al Canon 23 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, al retener indebidamente un cheque a favor de la señora Mendoza Vicente con el propósito de ir junto con ella a cambiarlo, para así poder cobrar sus honorarios. El licenciado Delannoy Solé presentó su con-testación a la querella el 3 de enero de 2003.
El 31 de enero de 2003 nombramos a la honorable Ygrí Rivera de Martínez, ex jueza del anterior Tribunal de Cir-cuito de Apelaciones, para que, en presencia de las partes, fungiera de Comisionada Especial, recibiera la prueba per-tinente y nos rindiera un informe con sus determinaciones de hecho y recomendaciones de Derecho. Concluida la en-comienda, la Comisionada Especial presentó su informe el 28 de febrero de 2005.
El caso quedó sometido para nuestra consideración el 15 de abril de 2005. Pasamos a resolver.
I — i
A continuación, exponemos los acontecimientos según surgen de las determinaciones de hecho del Informe de la Comisionada Especial.
La relación profesional entre el licenciado Delannoy Solé y la señora Mendoza Vicente comenzó en agosto de 1997, cuando ésta procuró los servicios profesionales del licenciado para tramitar su divorcio. En aquel momento pactaron verbalmente que el licenciado Delannoy Solé re-cibiría trescientos dólares por cada vista ante el Tribunal de Primera Instancia. Los honorarios finales ascendieron a dos mil quinientos dólares, suma que la señora Mendoza Vicente pagó en su totalidad. Terminado el pleito de divor-cio, la señora Mendoza Vicente volvió a requerir los servi-cios del licenciado Delannoy Solé, esta vez para la liquida-ción de la Sociedad Legal de Bienes Gananciales. Aunque entre el licenciado Delannoy Solé y la señora Mendoza Vicente nunca se redactó un contrato de honorarios de abo- *99 gado, el licenciado le informó a la quejosa que para este tipo de casos él acostumbraba pactar los honorarios contin-gentes que fluctuaban entre el diez y el quince por ciento de la participación que se le adjudicara finalmente a su representado. La señora Mendoza Vicente, entonces, ade-lantó trescientos dólares para los gastos iniciales del proceso.
El licenciado Deiannoy Solé hizo los arreglos pertinen-tes para la presentación de la demanda y otras compare-cencias escritas. Además, representó a la señora Mendoza Vicente en dos vistas ante el Tribunal de Primera Instan-cia, Sala Superior de Carolina, y realizó varias gestiones para identificar los activos y pasivos pertenecientes a la Sociedad Legal de Bienes Gananciales. A su vez, defendió los intereses de la señora Mendoza Vicente en cuanto a créditos que ésta ostentaba frente a la sociedad conyugal y frente a alegaciones sobre el carácter privativo de ciertas propiedades. Los esfuerzos y la labor del licenciado Deian-noy Solé culminaron en una estipulación firmada por los ex esposos, correspondiéndole a la quejosa la suma de $91,997.
El 10 de enero de 2002 llegó a la oficina del licenciado Deiannoy Solé un cheque por la cantidad de $15,445 a favor de la quejosa. La secretaria del licenciado se comunicó con la señora Mendoza Vicente para informarle sobre este hecho y le propuso que pasara por la oficina al día si-guiente para recogerlo e ir con el licenciado Deiannoy Solé a cambiarlo. Así, éste cobraría sus honorarios. Al inquirir sobre el monto de éstos, la señora Mendoza Vicente se en-teró de que ascendían a ocho mil dólares, suma que le pa-reció excesiva por el trabajo realizado. Así se lo hizo saber al licenciado, quien se mantuvo firme en cuanto a que los honorarios acordados habían sido entre el diez y el quince por ciento de lo adjudicado en la división ganancial. Ex-presó el licenciado que la cifra solicitada era, incluso, me-nor al equivalente del diez por ciento de la participación *100 adjudicada a la quejosa en la división de la extinta Socie-dad Legal de Bienes Gananciales. Surgieron discrepancias entre la señora Mendoza Vicente y el licenciado Delannoy Solé y, aunque varias veces acordaron ir al banco para cambiar el cheque, nunca se concretó la visita, pues las diferencias subsistían.
Así las cosas, el 16 de enero de 2002 el licenciado Delan-noy Solé le cursó una misiva a la señora Mendoza Vicente, en la que le informó que el 7 de diciembre de 2001 había presentado ante el foro de instancia una moción para que dictara sentencia basándose en la estipulación de los ex esposos. En esta carta le indicó, además, que tomando en consideración el total de activos que había obtenido en vir-tud de la estipulación, sus honorarios ascendían a $9,199; es decir, el diez por ciento de los activos que le fueron adjudicados. El Tribunal de Primera Instancia aprobó la estipulación de los ex esposos y dictó una sentencia a esos efectos.
En forma paralela, debido a que el licenciado Delannoy Solé continuaba en posesión del cheque a favor de la se-ñora Mendoza Vicente y ante la poca probabilidad de que las diferencias entre ambos se sosegaran, esta última soli-citó al librador del cheque que requiriese una suspensión de pago para que éste no pudiera cambiarse. Así se hizo el 24 de enero de 2002. La señora Mendoza Vicente, además, instó la queja que dio curso al presente procedimiento disciplinario.
El 14 de marzo de 2002 el licenciado Delannoy Solé pre-sentó ante la Sala Superior de Carolina del Tribunal de Primera Instancia, una demanda en cobro de dinero contra la señora Mendoza Vicente. El licenciado exigió el pago de $9,199 por los servicios profesionales, a los cuales ya he-mos hecho referencia. La señora Mendoza Vicente, por su parte, presentó una reconvención en la que alegó que el licenciado se había apropiado ilegalmente de un cheque de su pertenencia por la cantidad de $15,445. Argüyó, tam- *101 bién, que había sufrido humillaciones constantes por parte del licenciado Delannoy Solé y que éste fue negligente en el manejo de su caso, razón por la cual reclamó $50,000 por daños emocionales. La señora Mendoza Vicente, al mismo tiempo que ocurrían estos eventos, presentó una petición para acogerse a los beneficios que provee el Código Federal de Quiebras.
Luego de diversos incidentes en los casos ante la Corte de Quiebras de Estados Unidos para el Distrito de Puerto Rico y el foro de instancia, el licenciado Delannoy Solé y la señora Mendoza Vicente llegaron a un acuerdo en el que ésta se comprometió a pagar al primero cinco mil dólares en concepto de los honorarios adeudados. La Corte de Quiebras acogió el acuerdo y dictó una sentencia a esos efectos el 28 de octubre de 2003. Por su parte, el Tribunal de Primera Instancia dictó una sentencia en la que aceptó el desistimiento con perjuicio de las causas ante su consideración.
Fundamentándose en las determinaciones de hecho re-señadas, la Comisionada Especial entendió que el licen-ciado Delannoy Solé había incurrido en la conducta que le atribuyera el Procurador General. En esencia, determinó que el licenciado Delannoy Solé no había reducido a escrito el acuerdo de honorarios con la señora Mendoza Vicente, y que luego había retenido indebidamente un cheque de ésta. Enfatizó, sin embargo, que la retención del cheque no fue con la finalidad de apropiarse de éste, sino con el pro-pósito de acompañar a la quejosa a cambiarlo para así po-der cobrar los honorarios adeudados.
HH HH HH
En nuestra jurisdicción, está firmemente establecido que el contrato de servicios legales es un contrato sui géneris. Esto porque, aunque se trata de un contrato de arrendamiento de servicios profesionales al amparo del *102 Art. 1473 del Código Civil, 31 L.P.R.A. sec. 4111, el con-trato de servicios legales está regido por las consideracio-nes éticas relativas a la profesión legal. Nassar Rizek v. Hernández, 123 D.P.R. 360, 369 (1989); Méndez v. Morales, 142 D.P.R. 26, 33 (1996).
Cónsono con lo anterior, el Canon 24 del Código Ética Profesional, 4 L.P.R.A. Ap. IX, establece lo referente a la fijación de honorarios de abogados. Dispone, específicamente, que “[l]a fijación de honorarios profesionales debe regirse siempre por el principio de que nuestra profesión es una parte integrante de la administración de la justicia y no un mero negocio con fines de lucro”. íd. Aconseja, además, que el abogado y el futuro cliente lleguen a un acuerdo sobre los honorarios por servicios profesionales al inicio de la relación profesional, y que éste se reduzca a escrito. Id. “[T]anto los cánones de ética profesional como la jurisprudencia, indican que la mejor práctica la constituye el acordar, por escrito y con claridad, los honorarios y designar una cantidad fija o una fórmula para computarla o determinarla”. Ramírez, Segal & Látimer v. Rojo Rigual, 123 D.P.R. 161, 173 (1989).
Es evidente que plasmar por escrito los acuerdos sobre los honorarios profesionales es una precaución cada vez más necesaria, tanto para el beneficio de la ciudadanía que procura servicios legales, como para el beneficio de los abogados y de la imagen de la profesión. Ello, porque reducir el acuerdo sobre honorarios a escrito disminuye significativamente las posibilidades de desavenencias entre los abogados y sus clientes.
Por otro lado, el Canon 23 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, sobre la adquisición por parte del abogado de intereses en litigio y el manejo de los bienes del cliente, caracteriza las relaciones entre abogado y cliente como de naturaleza fiduciaria. Por esta razón, el canon referido requiere explícitamente “que éstas estén *103 fundadas en la honradez absoluta”. íd. Exige al abogado, además, dar “pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no mezclarlos con sus propios bienes ni permitir que se mezclen”. Id. Ya hemos manifestado que “la confianza entre abogado y cliente, en particular, el escrupuloso manejo de fondos, constituye ele-mento inseparable que se proyecta no sólo dentro del foro togado puertorriqueño, sino en el respeto y la estima ante la imagen pública”. In re Fernández Paoli, 141 D.P.R. 10, 16 (1996), y casos allí citados.
Según el propio texto del Canon 23, supra, y en virtud de la confianza que enmarca la relación, el abogado tiene la obligación de rendir cuentas al cliente sobre cualquier dinero o bienes de este último que estén en su posesión. In re Rodríguez Mercado, 165 D.P.R. 630 (2005). Por esta razón, repetidamente hemos resuelto que la retención por parte del abogado de cualquier cantidad de dinero perteneciente al cliente viola el Canon 23 del Código de Ética Profesional, supra. Esto es así independientemente de que la retención sea sin ánimos de apropiación. Es decir, la mera dilación innecesaria en la entrega es suficiente para infringir el citado Canon 23. In re Rodríguez Mercado, supra; In re Rivera Irizarry, 155 D.P.R. 687, 693 (2001); In re Vázquez O’Neill, 121 D.P.R. 623, 628 (1988); In re Arana Arana, 112 D.P.R. 838, 844 (1982). Tal actuación por parte de un abogado demuestra menosprecio a sus deberes. In re Rivera Irizarry, supra.
Consideramos, en mérito de lo expuesto y de los hechos probados ante la Comisionada Especial, que el licenciado Delannoy Solé, en su relación con la señora Mendoza Vicente para el caso de división de los bienes gananciales, faltó a los deberes impuestos por los Cánones 23 y 24 del Código de Ética Profesional, supra. Delannoy Solé no detalló por escrito el acuerdo sobre los honorarios que cobraría por sus servicios ni puntualizó de forma específica la cantidad que cobraría o la fórmula para computarla, *104 pues sólo informó previamente a la cliente que él acostum-braba cobrar entre un diez a un quince por ciento de la participación que finalmente se le adjudicara, sin precisar cuánto exigiría concretamente. Entendemos que este pro-ceder no es cónsono con las normas del Canon 24 del Có-digo de Etica Profesional, supra. De igual modo, estima-mos que, al retener el cheque dirigido a la señora Mendoza Vicente, el licenciado Delannoy Solé transgredió los debe-res impuestos por el Canon 23 del Código de Ética Profe-sional, supra. Sus actuaciones vulneraron la confianza y transparencia que deben regir las relaciones entre los abo-gados y sus clientes.
No obstante, no podemos soslayar que el licenciado De-lannoy Solé ha gozado de buena reputación dentro de nues-tra profesión por más de treinta años y que durante ese período nunca se había enfrentado a un procedimiento disciplinario. Tampoco podemos obviar que realizó con es-mero las tareas para las cuales fue contratado y que nunca se pudo probar que su desempeño fuera deficiente. Ade-más, es menester tener presente que el licenciado Delan-noy Solé y la señora Mendoza Vicente llegaron, a final de cuentas, a una estipulación sobre los honorarios que reci-biría el primero, y que esta estipulación fue aprobada por el Tribunal de Primera Instancia y por la Corte de Quiebras. Finalmente, debemos destacar que el licenciado Delannoy Solé aceptó los hechos que se le imputaron y que durante el procedimiento se mostró arrepentido y apesa-dumbrado por su conducta.
I — I <¡
Por todo lo anterior, resolvemos que el licenciado Delan-noy Solé no observó cabalmente lo requerido por los Cáno-nes 23 y 24 del Codigo de Ética Profesional, supra. Lo amo-nestamos por sus actuaciones que, por no estar a la altura de lo que se espera de la profesión legal, no contribuyen a *105 mantener su buen nombre. Lo apercibimos que de repetirse en un futuro la conducta que dio curso a la presente quere-lla, seremos más severos en nuestra sanción.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rebollo López no intervino.