EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br>Enrique Pellot Córdova<br>(TS-6,142)<br><br>Sheila Pellot Cestero<br>(TS-14,581) | 2020 TSPR 96<br><br>204 DPR \_\_\_\_\_ |

Número del Caso:  CP-2016-17


Fecha:  11 de agosto de 2020


Oficina del Procurador General:

    Lcda. Karla Pacheco Álvarez
    Subprocuradora General

    Lcdo. Joseph Feldstein Del Valle
    Subprocurador General

    Lcdo. Eric O. De La Cruz Iglesias
    Procurador General Auxiliar


Abogado de los Querellados:

    Lcdo. José E. Valenzuela Alvarado


Comisionada Especial:

    Hon. Crisanta González Seda


Materia:  La suspensión será efectiva una vez advenga final y firme la Sentencia conforme la Regla 45 del Reglamento del Tribunal Supremo sobre reconsideración.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| *In re*<br><br>Enrique Pellot Córdova<br>(TS-6,142)<br><br>Sheila Pellot Cestero<br>(TS-14,581) | **Núm.** CP-2016-0017 |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 11 de agosto de 2020.

Este recurso nos provee la oportunidad de pronunciarnos en torno a la Ley Núm. 43 del 12 de mayo de 2016, que tuvo el efecto de enmendar el Artículo 1867 del Código Civil de Puerto Rico, 31 LPRA sec. 5297, para establecer un término prescriptivo de tres (3) años a las acciones disciplinarias contra abogados y notarios por infracciones a los Cánones del Código de Ética Profesional.

**I.**

El 19 de septiembre de 2014, el Sr. Ángel L. Pérez Camacho (señor Pérez Camacho o quejoso) presentó una queja en contra del Lcdo. Enrique Pellot Córdova y la Lcda. Sheila Pellot Cestero.[1] En síntesis, el señor Pérez Camacho le imputó a los referidos letrados haber retenido indebidamente de su mesada una cantidad de honorarios en exceso de lo que

---

[1] El licenciado Pellot Córdova fue admitido al ejercicio de la abogacía el 1 de noviembre de 1978, a la práctica de la notaría el 21 de enero de 1979 y cesó esta última en el 2018. Por su parte, la licenciada Pellot Cestero fue admitida al ejercicio de la abogacía el 19 de agosto de 2013.

les correspondía, por lo que reclamó la devolución de dicha cantidad.

Surge del expediente que, el 22 de febrero de 2011, el señor Pérez Camacho suscribió un acuerdo de servicios profesionales con el Bufete Casanova & Pellot, con el fin de que asumieran su representación legal durante la etapa de juicio en su fondo en el pleito que instó en contra del Sistema Universitario Ana G. Méndez (en adelante SUAGM) por despido injustificado al amparo de la Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA 185 *et seq.* (Ley Núm. 80), hostigamiento y acoso laboral, y daños y perjuicios bajo el procedimiento sumario que dispone la Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118 *et seq.* (Ley Núm. 2). En el contrato se estableció un pacto de honorarios por el 33% de la cantidad obtenida mediante sentencia.[2] Sin embargo, no

---

[2] En lo pertinente, el pacto de honorarios en el referido contrato consignaba lo siguiente:

> Los honorarios de abogados del contrato ante nos se pactan a razón de un 33% de la cantidad obtenida por sentencia. De convertirse el pleito en uno de carácter ordinario las costas serán por parte del cliente. A esos efectos, se le asesoró al cliente y el mismo accedió y entendió que de no prevalecer por la vía judicial podría incurrir en el pago de cualquier costa y honorario de abogado que pueda corresponder.
> . . .
> El Bufete Casanova & Pellot accedió a representar legalmente al Sr. Ángel Pérez Camacho (en adelante cliente) en el caso ante nos, luego de haberle hecho las advertencias y recomendaciones con relación al procedimiento judicial. Se le asesoró a esos efectos de sus alternativas y posibilidades de ventilar el juicio en su fondo y sus alternativas de la aceptación de acuerdo transaccional. Además [sic] se le explicó que como parte de las alegaciones que originaron la

se incluyó la cantidad de honorarios a pagar en caso de no prevalecer. Además, en el contrato se hizo constar que la naturaleza del caso en el cual se asumía la representación legal era civil.[3] En ninguna de las demás cláusulas del contrato se especificó que se trataba tanto de una reclamación al amparo de leyes laborales, como de una causa de acción de daños y perjuicios bajo el Art. 1802 del Código Civil, *supra*. El contrato fue suscrito entre el señor Pérez Camacho y el Bufete Casanova & Pellot, firmado por la licenciada Pellot Cestero.

Luego del transcurso de varios trámites procesales, el 25 de marzo de 2011, los letrados solicitaron que el foro primario dictara sentencia a favor del señor Pérez Camacho y ordenara el pago de $56,737.50 dólares en concepto de mesada, más el 25% por concepto de honorarios de abogado, conforme a la Ley Núm. 402 de 12 de mayo de 1950, Ley de Honorarios de Abogados en Reclamaciones Laborales (Ley Núm. 402). El 13 de abril de 2011, el foro primario notificó una sentencia parcial en la cual declaró Ha Lugar la demanda sobre despido injustificado. En cuanto a la causa de acción

---

presente causa de acción no se incluyó la re-instalación [sic] a su puesto en el Sistema Ana G. Méndez. Por último [sic] en el presente caso el Bufete Casanova & Pellot continuó la representación legal en la etapa de juicio en su fondo.

*Contestación a queja*, anejo 2.

[3] El contrato especificaba que los honorarios pactados en todo caso, sin importar su naturaleza, sólo cubrían el pago de la representación legal. Se especificaba que los gastos, peritos, costas y sellos serían por cuenta del cliente.

por daños y perjuicios, señaló una vista para recibir prueba sobre dichas alegaciones. Nada dispuso sobre los honorarios de abogado. El 31 de agosto de 2012, el foro apelativo intermedio confirmó dicha determinación, pero desestimó la acción por daños y perjuicios y dejó sin efecto la vista pautada.

El 30 de octubre de 2012, SUAGM expidió el cheque correspondiente de la mesada por el total de $56,737.50. El 5 de noviembre de 2012, el señor Pérez Camacho y ambos licenciados se reunieron en el Banco Bilbao Vizcaya para cambiar el cheque, del cual retuvieron la cantidad de $14,184.37 en concepto de honorarios, más $216.30 por costas, para un total de $14,400.67. Posterior a esta transacción, este Tribunal denegó expedir un recurso de apelación -acogido como *certiorari*- presentado por los letrados en representación del señor Pérez Camacho. Mediante éste, se procuraba la revisión de la desestimación de la causa de acción de daños y perjuicios por parte del Tribunal de Apelaciones.

El 8 de febrero de 2013, los letrados le solicitaron al tribunal de instancia que les concediera un 25% de honorarios de abogado por la causa de acción de despido injustificado. Sin embargo, el foro primario les concedió un 15% de la cantidad adjudicada de la mesada. Inconformes, los licenciados presentaron una reconsideración, a la cual incorporaron un desglose de honorarios y solicitaron que se les concediera una cantidad que no fuera menor del 30% de la

mesada, pues especificaron que la cuantía de los honorarios reclamados ascendía a $36,350.00. El tribunal de instancia denegó la reconsideración.

El 8 de agosto de 2013, SUAGM expidió el cheque en concepto de honorarios de abogados por la cantidad de $8,510.62 dólares. De este cheque, los licenciados retuvieron la cantidad de $2,127.66 dólares, para un total de $16,528.33 dólares en concepto de costas y honorarios por los servicios prestados.

El 25 de agosto de 2014, el señor Pérez Camacho envió una carta a los letrados en la cual reclamó la devolución de $8,017.70 dólares que le cobraron indebidamente, ya que entendía que a éstos sólo les correspondía la suma de $8,510.62. El 10 de septiembre de 2014, los abogados le cursaron una carta en la cual expresaron su interés en reunirse con éste, pero el señor Pérez Camacho nunca respondió.

El 19 de septiembre de 2014, se presentó la queja. El 29 de diciembre de 2014, ambos licenciados contestaron la misma y argumentaron que el contrato suscrito con el quejoso era para representarlo legalmente en varias causas de acción, y que independientemente de lo establecido en la Ley Núm. 80 sobre honorarios, ello no aplicaba a las causas de acción de naturaleza extracontractual. Expusieron que tenían derecho a recibir una compensación razonable por los servicios prestados, las costas y los gastos incurridos en la defensa de la acción por daños y perjuicios, así como por

las gestiones realizadas en los recursos de apelación en los distintos foros, por lo que no procedía la devolución del dinero reclamado. Finalmente, solicitaron la desestimación de la queja.

El 10 de julio de 2015, referimos el asunto a la Oficina de la Procuradora General para que realizara la investigación correspondiente, y el 17 de noviembre de 2015, nos rindió un informe. En éste, concluyó que los letrados pudieron haber incurrido en conducta contraria a los Cánones 23, 24 y 38 de Ética Profesional, 4 LPRA Ap. IX C. 23, 24, 38. Luego de examinar el referido informe, el 24 de junio de 2016, ordenamos a la Procuradora General presentar la querella contra los letrados.

Así las cosas, el 23 de agosto de 2016, los licenciados presentaron un escrito titulado *Solicitud de desestimación por falta de jurisdicción*. En éste, argumentaron que la Rama Legislativa -mediante la Ley Núm. 43 del 12 de mayo de 2016 (Ley Núm. 43)- enmendó el Art. 1867 del Código Civil, 31 LPRA sec. 5297, para instituir un término prescriptivo de tres (3) años a las acciones disciplinarias contra abogados. A base de ello, alegaron que la acción disciplinaria estaba prescrita. Específicamente, expusieron que operaba el principio de favorabilidad al tratarse de un procedimiento cuasi-penal, por lo que dicho término prescriptivo era de aplicación retroactiva a los hechos de este caso.[4] El 18 de

---

[4] Plantearon que desde el momento en que el señor Pérez Camacho suscribió el contrato con el bufete, éste debió haber sabido lo que ahora alegaba en la queja, por lo que ésta

noviembre de 2016, declaramos No Ha Lugar la desestimación solicitada.

El 14 de noviembre de 2016, la Procuradora General presentó la *Querella* en contra de los letrados y les imputó haber violado el Canon 24 del Código de Ética Profesional por haber suscrito un contrato con el señor Pérez Camacho para que éste pagara las costas y honorarios en un caso de índole laboral. Según expuso, tal proceder era contrario a lo dispuesto sobre honorarios y costas en la Ley Núm. 2, *supra*, y la Ley Núm. 402, *supra*. En adición, se les imputó haber violentado el deber de fiducia requerido por el Canon 23 al no devolver parte de la mesada que se les adelantó por concepto de costas y honorarios. Finalmente, se les imputó haber violado el Canon 38 por cobrar y recibir costas y honorarios de la mesada de su cliente, lo cual era contrario al honor y la dignidad que se requiere de la profesión legal, y constituía la conducta impropia proscrita por la Ley Núm. 402.

Luego de evaluar la *Querella* y la contestación de los licenciados, el 30 de mayo de 2017, designamos una Comisionada Especial para que recibiera la prueba de las partes y nos remitiera un informe.[5] Luego de los trámites de

---

estaba prescrita. En la alternativa, argumentaron que el término prescriptivo más análogo era el de las acciones instadas bajo el Art. 1802, *supra*. Por consiguiente, aun así, estaba prescrita.

[5] El 16 de junio de 2017, los letrados presentaron una *Moción informativa sobre oferta de sentencia* en la cual nos informaron que le habían cursado una oferta al señor Pérez Camacho mediante carta, la cual anejaron. En la misma, éstos

rigor, la Comisionada Especial nos rindió su informe, en el cual concluyó que los letrados violaron las disposiciones de los Cánones 23, 24 y 38 del Código de Ética Profesional, *supra*.

En respuesta, el 13 de agosto de 2018, los licenciados adujeron nuevamente que la queja estaba prescrita. Además, expusieron que el licenciado Pellot Córdova no debía ser disciplinado, pues éste participó en el caso en concepto de mentor y en calidad de padre de la licenciada Pellot Cestero, que no formó parte del contrato de servicios profesionales suscrito entre las partes, y que no se benefició económicamente de los honorarios retenidos. En cuanto a la letrada, insistieron en que se suscribió un contrato para representar al quejoso en diversas causas de acción, y que los honorarios cobrados correspondían a los trámites realizados con relación a la acción de daños y perjuicios.

Evaluado el *Informe de la Comisionada Especial*, así como los documentos que constan en el expediente, estamos en posición de resolver. Sin embargo, previo a atender los méritos de la *Querella* -y como cuestión de umbral- nos corresponde determinar si la Ley Núm. 43 constituye una actuación legislativa que complementa satisfactoriamente nuestra facultad para regular la profesión o si, por el contrario, se trata de una acción legislativa que limita el ejercicio de nuestro poder inherente.

---

ofrecieron realizar el pago de $8,017.70. La oferta fue rechazada por el señor Pérez Camacho.

**II.**

**A.**

El principio de separación de poderes que emana de la Sección 2, Artículo I de nuestra Constitución. Art. I, Sec. 2, Const. ELA, LPRA Tomo 1, crea un sistema de pesos y contrapesos que asegura un equilibrio de poder entre las tres ramas de gobierno. Este sistema no pretende establecer una total separación entre las ramas, sino promover y mantener la cooperación entre ellas, así como evitar que una interfiera de manera indebida o actúe en detrimento de la otra. Para garantizar esto, nuestra Constitución le delegó a cada una de las ramas facultades específicas con el propósito de evitar que el poder se concentre sólo en una. Cónsono con esta delegación de poderes, cada rama ha invocado ciertos poderes inherentes a sus funciones y facultades.

La Constitución deposita en el Poder Judicial la facultad de regir todo lo relacionado con la administración del sistema de justicia. Este Tribunal ha sido consistente al reiterar que ínsito a esta facultad constitucional, se encuentra el poder inherente de regular la profesión legal en Puerto Rico. Este poder conlleva -necesariamente- la potestad de fijar las condiciones y los requisitos necesarios para la admisión a la profesión legal. Así también, el Tribunal tiene el poder inherente de reglamentar la conducta ética de quienes han sido admitidos a la profesión.

La potestad disciplinaria de este Tribunal va dirigida a asegurarnos que los llamados a este ministerio ejemplifiquen con su conducta los valores y principios deontológicos acrisolados en los Cánones del Código de Ética Profesional. Y es que el abogado al asumir su oficio se compromete a seguir las pautas de comportamiento que garantizan el fiel cumplimiento de la función social que conlleva el ejercicio de la profesión legal. El propósito de la función disciplinaria de este Tribunal no es entonces castigar al abogado, sino por el contrario, proteger a la comunidad y a la propia profesión. Véase, entre otros, *In re Abella*, 14 DPR 748, 749 (1908); *In re Tormes*, 30 DPR 267 (1922); *In re Liceaga*, 82 DPR 252, 253 (1961); *In re Sepúlveda, Casiano*, 155 DPR 193, 207 (2001), *In re López González*, 171 DPR 567 (2007). Véase, además, Ángela Aparisi Miralles, *Ética y deontología para juristas*, EUNSA, 2016, Cap. 3.

No obstante, también hemos afirmado que es posible que la Rama Legislativa complemente nuestro poder inherente mediante legislación. En diversas ocasiones hemos señalado que no toda actuación legislativa que incida en nuestra facultad de regular la profesión legal lacera el delicado balance de poderes garantizado por la Constitución. Anteriormente, hemos afirmado que la Legislatura puede establecer requisitos mediante legislación para regular la admisión de abogados al ejercicio de la profesión sin que se entienda, necesariamente, que ello constituye una usurpación

de nuestro poder inherente. Sin embargo, hemos enfatizado que las leyes aprobadas que versen sobre esta materia son puramente directivas y no obligatorias para este Foro ya que, como dijimos, deben ser consistentes con nuestro poder inherente para reglamentar la profesión legal en Puerto Rico. Véanse, *Ex parte Jiménez*, 55 DPR 54 (1939); *In re Bosch*, 65 DPR 248, 251 (1945); *In re Abella*, 67 DPR 229, 238 (1947); *In re Liceaga*, 82 DPR 252, 255 (1961); *López Santiago, Ex Parte*, 147 DPR 909, 911 (1999). Igualmente, el mismo carácter directivo y no mandatorio aplicará a aquella legislación que busque regular la facultad inherente del Tribunal de disciplinar a la profesión legal. La obligatoriedad de los postulados éticos recogidos en los Cánones del Código de Ética Profesional está garantizada precisamente por la facultad de sancionar que ostenta este Tribunal.

Al enfrentarnos a legislación que versa sobre la reglamentación de la profesión legal, este Tribunal se ha amparado en su poder inherente y se ha reservado la facultad de determinar cuál legislación complementa ese poder, y cuál lo usurpa. Cuando concluimos que una legislación incide en nuestro poder inherente, no hemos vacilado en rechazarla de plano.

Pasemos entonces a considerar el alcance de la Ley Núm. 43.

**B.**

Con la aprobación de la Ley Núm. 43, la Asamblea Legislativa incorporó un nuevo inciso al Art. 1867 del Código Civil de Puerto Rico, *supra*, para imponer por primera vez en nuestra jurisdicción un término prescriptivo a las acciones disciplinarias contra abogados y notarios. En la Exposición de Motivos de la Ley Núm. 43, la Asamblea Legislativa explicó que la inexistencia de un límite de tiempo para promover una acción disciplinaria contra un integrante de la profesión legal por infringir los Cánones de Ética Profesional causaba grave perjuicio para éstos. *Exposición de Motivos*, Ley Núm. 43, en la pág. 1. En específico, se expresó que:

> . . . puede darse el caso de que por el transcurso del tiempo la evidencia necesaria para defenderse de una acción disciplinaria no esté disponible al momento de enfrentarse a ella. Del mismo modo, la ausencia de término prescriptivo para las querellas contra los juristas da paso a la presentación de acciones que pueden ser frívolas, producto de la mala fe de personas inescrupulosas.

*Id*.

Así, el nuevo inciso del Art. 1867 del Código Civil, *supra*, le impone a una persona que interese iniciar un procedimiento disciplinario contra un abogado o notario un término de tres (3) años para que presente la queja ante este Foro. Dicho término comienza a transcurrir en el momento que quien inicie el procedimiento disciplinario tenga conocimiento –o debía conocer luego de emplear la debida diligencia– de las circunstancias que constituían la causa

para disciplinar, y tenga la capacidad para así denunciarla. *Id*.[6]

Ciertamente, mediante la Ley Núm. 43, la Legislatura entendió que le competía establecer legislación para proteger a la clase togada contra los perjuicios inherentes a las imputaciones frívolas y la demora injustificada en la presentación de quejas en su contra al amparo del Código de Ética Profesional. Dicha actuación, sin embargo, tiene el efecto de imponer unilateralmente a este Tribunal un término para ejercer su poder inherente de regular la profesión legal e imponer sanciones disciplinarias a sus integrantes. Somos del criterio que le compete a este Tribunal, y no a la Asamblea Legislativa, emplear los mecanismos necesarios para evitar que el procedimiento disciplinario violente el derecho a un debido proceso de ley de los abogados bajo su jurisdicción disciplinaria y pautar las normas -sustantivas y procesales- que han de regir esos procedimientos.

Le corresponde a esta Curia evaluar e investigar los hechos particulares de cada caso y la conducta imputada al abogado para así determinar si éste mantiene la aptitud que

---

[6] Además, este inciso delimitó excepciones en las cuales no aplicará el término prescriptivo instituido. Así, el mismo no se aplicará en el periodo en que el abogado, mediante actos u omisiones intencionales, impida que la actuación que se le imputa sea descubierta. *Id*. Tampoco será de aplicación cuando el abogado se encuentre fuera de la jurisdicción con el propósito de evadir un procedimiento disciplinario. *Id*. Finalmente, el término no se aplicará cuando la conducta del abogado sea constitutiva de delito, exista o no una denuncia o acusación formal, un procedimiento penal o una convicción, o cuando se trate de un procedimiento disciplinario recíproco. *Id*.

le hizo digno de ser admitido a esta profesión, y si merece continuar ejerciéndola. Resaltamos nuevamente que este Tribunal, a tenor con su poder inherente de regular la profesión legal en Puerto Rico, tiene la responsabilidad de velar que los letrados desempeñen su importante labor de manera que su comportamiento se ajuste a lo dispuesto en el ordenamiento disciplinario. Los abogados, como oficiales del tribunal, y en cumplimiento con su función social, tienen el deber de llevar a cabo una gestión profesional adecuada, responsable y capaz. Por esto, precisamente, somos del criterio que cualquier conducta que un abogado o notario despliegue que incumpla con los deberes y responsabilidades impuestos por esta honorable profesión y el Código de Ética Profesional, debe estar sujeta al escrutinio de este Tribunal. Se trata a fin de cuentas de una especie de profilaxis social, que exige la intervención de este Tribunal para beneficio de la sociedad y de la propia profesión, como ya se indicó. Imponer tan rigurosa limitación al ejercicio de nuestra función disciplinaria, choca con nuestra responsabilidad connatural de reglamentar la profesión legal.

Somos conscientes de que nuestro poder disciplinario no es irrestricto y que éste no puede ejercitarse festinada o irracionalmente. *In re Vélez Lugo*, 162 DPR 735, 739 (2004). Por esa razón, previo a iniciar un procedimiento ético, somos cuidadosos al evaluar si la conducta que se le imputa al abogado o al notario amerita que ejerzamos nuestro poder

disciplinario. De entender que la conducta imputada no infringe el Código de Ética Profesional, que la queja es frívola, o que existen otros remedios en derecho, archivamos el asunto. Igualmente, nada le impide a un abogado que considere que, debido al transcurso del tiempo desde que ocurrió el acto por el cual se le exige responsabilidad ética se encuentre indefenso, levante esa defensa ante el Tribunal. Ejercemos nuestro poder disciplinario con los límites que impone el derecho a un debido proceso de ley. *In re Reichard Hernández*, 180 DPR 604, 614 (2011).

En otras palabras, y conforme con lo discutido, concluimos que la imposición por la vía estatutaria de un término prescriptivo a las acciones disciplinarias contra abogados y notarios tiene el efecto de limitar la jurisdicción disciplinaria de este Tribunal y coarta nuestra prerrogativa de supervisar y garantizar que las actuaciones de los juristas exalten el honor y la dignidad de la profesión. Es evidente que la Ley Núm. 43 afecta sustancialmente las facultades constitucionales de esta Curia, pues incide tanto en nuestra facultad de supervisar y evaluar la conducta y la aptitud de los abogados y notarios, como también restringe el ejercicio de nuestro poder disciplinario. Como hemos dicho, corresponde a este Tribunal, mediante un análisis sosegado de cada caso ante nuestra consideración, determinar si una queja debe ser archivada por frivolidad, incuria o la inhabilidad de obtener evidencia que sustente las alegaciones del quejoso.

Las particularidades de las quejas contra la clase togada imposibilitan adoptar irreflexivamente un término uniforme e inflexible que limite irremediablemente nuestra facultad de asegurar la sana administración de la justicia. A la luz de lo anterior, resulta forzoso concluir que la Ley Núm. 43 violenta el principio de separación de poderes e incide indebidamente en nuestro poder inherente de regular la profesión legal. Consiguientemente, el inciso cinco (5) del Art. 1867 del Código Civil, *supra*, se tendrá por no puesto.[7]

Atendido lo anterior, procede que evaluemos la conducta de los licenciados Pellot Córdova y Pellot Cestero a la luz de los Cánones del Código de Ética Profesional y la normativa vigente en los casos de índole laboral.

**III.**

El Canon 23 del Código de Ética Profesional requiere que todo abogado dé pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión. 4 LPRA Ap. IX C. 23. Esto es así pues la relación entre el abogado y el cliente se caracteriza por ser de naturaleza fiduciaria, por lo que debe estar fundada en la honradez absoluta. *Id*. En atención a ello, hemos expresado que la mera retención de fondos que pertenecen a los clientes violenta los preceptos de este canon. *In re Reyes Coreano*, 190 DPR 739, 755 (2014). Véase, además, *In re Vega Quintana*, 188 DPR 536 (2013). Ello, independientemente de que no se tenga la intención de

---

[7] Debido a que rechazamos la aplicación de la Ley Núm. 43-2016, resulta innecesario atender el planteamiento de los letrados en cuanto a su aplicación retroactiva.

retenerlos para apropiárselos permanentemente, o que posteriormente éstos sean devueltos.

Por otro lado, el Canon 24 establece cuáles son los factores que deben considerarse al fijar los honorarios de abogado. 4 LPRA Ap. IX C. 24. El contrato de servicios profesionales de un abogado se considera una variante del contrato de arrendamiento de servicios. *In re Rodríguez Mercado*, 165 DPR 630, 641 (2005). No obstante, debido a la naturaleza de la profesión, lo hemos catalogado como un contrato *sui generis*, pues está revestido de un alto contenido ético. *Id*. en la pág. 642. A consecuencia de esto, la relación abogado-cliente está inexorablemente ligada a los postulados del Código de Ética Profesional, por lo que todo abogado -al iniciar su gestión profesional- debe tener presente lo dispuesto en el Canon 24, *supra*.

Aunque no es requisito para su validez que el contrato de servicios profesionales de un abogado sea reducido a escrito, como señala el Canon 24, la mejor práctica -y lo más deseable- es así hacerlo. De esta forma, se evitan las posibles controversias que puedan surgir con los clientes sobre la compensación por los servicios prestados. *Nassar Rizek v. Hernández*, 123 DPR 360, 371 (1989). Somos conscientes que en algunos casos no es posible anticipar la extensión y el valor de los servicios que se prestarán al cliente. Precisamente por eso hemos resuelto que el abogado debe reducir a escrito el acuerdo con el cliente de manera que contenga sus términos con un lenguaje claro y libre de

ambigüedades, y que a su vez se contemplen las contingencias que previsiblemente puedan surgir durante el transcurso de la representación. *In re Rodríguez Mercado*, *supra*, en la pág. 642.

En cuanto a los honorarios contingentes, hemos expresado que no están reñidos con la ética profesional, siempre y cuando sean beneficiosos para el cliente, o cuando éste los prefiera luego de que el abogado le explique con claridad sus consecuencias. *In re Franco Rivera*, 169 DPR 237, 266 (2006). El abogado que acepta su remuneración a base de honorarios contingentes recibe su compensación si gana el caso, si acontece alguna de las contingencias pactadas, y en proporción a la cuantía adjudicada por el tribunal. *Pérez Marrero v. Col. Cirujanos Dentistas de PR*, 131 DPR 545, 560 (1992). Sin embargo, si no ocurre alguna de las anteriores, el abogado no cobrará.

Conviene advertir que -además de las exigencias del Canon 24, *supra*, y del derecho a recibir una compensación razonable- los abogados deben también regirse por las limitaciones estatutarias que existen respecto a la fijación de honorarios profesionales. Entre las limitaciones impuestas se encuentra la prohibición de llevar a cabo pactos sobre honorarios con trabajadores que reclamen contra sus patronos.

La Asamblea Legislativa, mediante la Ley Núm. 402, *supra*, estableció expresamente que son nulos y contrarios al orden público todos los contratos, convenios o acuerdos en

los que los trabajadores se obliguen directa o indirectamente a pagar honorarios a sus abogados en los casos de reclamaciones judiciales o extrajudiciales contra sus patronos al amparo de la legislación laboral de Puerto Rico, de la legislación federal, o de un convenio individual o colectivo. Art. 3 de la Ley Núm. 402, 32 LPRA sec. 3116. Asimismo, este Tribunal recientemente determinó que son igualmente nulas aquellas cláusulas mediante las cuales un empleado renuncia a honorarios de abogado con el fin de transigir una reclamación laboral en contra de su patrono, por ser contrarias a lo dispuesto en la Ley Núm. 402. Véase *Judith Berkan y otros v. Mead Johnson Nutrition Puerto Rico, Inc.*, 2020 TSPR 29. El propósito de este estatuto es proteger a los trabajadores y empleados, para evitar que se reduzca el valor de su trabajo.

Así, con respecto a los honorarios de abogado al amparo de la Ley Núm. 402, y la Ley Núm. 80, *supra*, si el trabajador es exitoso en su reclamación, el tribunal le impondrá el pago de los honorarios de abogado al patrono. Cualquier abogado que actúe de forma contraria a la prohibición impuesta mediante la Ley Núm. 402, vendrá obligado a reembolsarle al obrero la cantidad que haya sido pagada, más una suma igual de dinero en concepto de daños líquidos. Art. 4 de la Ley Núm. 402, 32 LPRA sec. 3117. Véase además *In re Franco Rivera*, *supra*.

Por último, el Canon 38 establece que "el abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del

honor y dignidad de su profesión, aunque al así hacerlo conlleve sacrificios personales". Canon 38, *supra*. Así pues, hemos señalado que "por ser los abogados el espejo donde se refleja la imagen de la profesión, éstos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen". *In re Guemárez Santiago*, 191 DPR 611, 620 (2014). Véase además *In re Otero Calero*, 200 DPR 561 (2018).

Con estos preceptos en mente, procedemos a resolver la controversia ante nuestra consideración.

## IV.

Primeramente, debemos expresar que no nos persuade el argumento del licenciado Pellot Córdova en cuanto a que sólo participó en el litigio en concepto de mentor y en calidad de padre de la licenciada Pellot Cestero, que no formó parte del contrato, y que no se benefició de los honorarios retenidos al señor Pérez Camacho. Una evaluación del expediente del caso revela que el licenciado Pellot Camacho compareció en múltiples ocasiones como representante legal del señor Pérez Camacho ante los foros inferiores, incluso ante este Foro. También, su firma aparece tanto en la moción en solicitud de pago de honorarios, como en el desglose de honorarios que se presentó ante el Tribunal de Primera Instancia. En este último documento se factura por los servicios de ambos letrados, y se especifican tanto las gestiones en las que ambos participaban, como aquellas instancias en las que sólo uno de ellos realizó las

diligencias. Además, su firma -junto con la de la licenciada Pellot Cestero- aparece en el acuse de recibo del cheque de honorarios de abogado expedido por SUAGM. Es forzoso concluir pues, que contrario a lo alegado por el licenciado Pellot Córdova, éste sí participó activamente como representante legal del señor Pérez Camacho, y reclamó los honorarios que dieron paso a la querella ante este Tribunal.

Ahora bien, luego de evaluar la normativa disciplinaria y el derecho aplicable a las reclamaciones laborales, entendemos que, según se concluye en el *Informe de la Comisionada Especial*, los licenciados Pellot Córdova y Pellot Cestero infringieron los Cánones 23, 24 y 38 del Código de Ética Profesional, según imputados en la *Querella*. Veamos.

Luego de conocer la naturaleza del caso por el cual el señor Pérez Camacho solicitó los servicios del Bufete Casanova & Pellot, se suscribió un contrato de servicios profesionales en una acción civil -la cual no se especificó- en donde se pactaron honorarios contingentes a razón del 33% de la cantidad obtenida por sentencia. Interesantemente, en el contrato sólo se hizo alusión a que en las alegaciones de la demanda no se había incluido la reinstalación del señor Pérez Camacho a su puesto en el Sistema Ana G. Méndez. En cuanto a la causa de acción de daños y perjuicios al amparo del Art. 1802, *supra*, no se especificó nada en el referido acuerdo. Por otra parte, se incluyó en el contrato una expresión a los efectos de que el señor Pérez Camacho tendría

que pagar honorarios y gastos de no prevalecer en su reclamación. Sin embargo, no se especificó la cuantía a pagar en el caso de que esto ocurriera.

Cabe resaltar que nunca se llegó a presentar evidencia en cuanto a los daños y perjuicios alegados, pues se fraccionaron las causas de acción y la vista pautada para probar dichos daños nunca se llegó a celebrar, puesto que el Tribunal de Apelaciones desestimó la causa de acción y este Foro se negó a revisar dicha determinación. Incluso, aún pendiente el recurso de *certiorari* ante este Tribunal, los letrados procedieron a cobrar de la mesada del señor Pérez Camacho por la acción en daños y perjuicios, según estos alegan, y retuvieron $14,184.37 en concepto de honorarios, aún sin saber si la acción prosperaría, puesto que no existía un dictamen final y firme a favor de su representado. En efecto, esa causa de acción no prosperó, por lo que los licenciados no tenían derecho a los honorarios que cobraron.

A pesar de haber retenido una cantidad sustancial de la mesada otorgada a su cliente, los letrados presentaron ante el foro primario un desglose de honorarios con tarifas por hora, donde incluyeron gestiones realizadas en la causa de acción laboral. Como se indicó, el Tribunal de Primera Instancia sólo otorgó un 15% de honorarios a los licenciados a tenor con lo dispuesto en la Ley Núm. 80. Por ende, la cuantía de honorarios que le correspondía a los letrados era la suma de $8,510.62.

Ante los hechos de este caso, concluimos que los licenciados Pellot Córdova y Pellot Cestero incurrieron en conducta contraria a los Cánones 23, 24 y 38. Toda vez que el caso del señor Pérez Camacho era una reclamación de naturaleza laboral, los letrados no podían otorgar un contrato de honorarios y costas, ni retener suma alguna de dinero de la mesada de su cliente en concepto de honorarios por dicha representación, ni adelantar a cobrar -como aquí hicieron- la cantidad de $14,184.37, más costas, para un total de $14,467.67, previo a que el foro primario determinara los honorarios que les correspondía a base de su labor en las causas de acción de índole laboral en las que prevalecieron. Al actuar de esta forma, los licenciados Pellot Córdova y Pellot Cestero violentaron el deber de fiducia requerido por el Canon 23. De igual forma, al suscribir un contrato de honorarios y costas para representar al señor Pérez Camacho en su reclamación de índole laboral, incurrieron en la conducta proscrita por la Ley Núm. 402, *supra*, y violentaron las disposiciones del Canon 24, *supra*.

Por otro lado, pactar honorarios contrarios a lo dispuesto en la Ley Núm. 402, *supra*, y retenerlos directamente de la mesada de su cliente previo a que el tribunal determinara la cuantía y autorizara el pago de estos, socava la imagen, confianza y respeto de la profesión legal. Los juristas tienen el deber de evitar que sus actuaciones den margen a la más leve sospecha de impropiedad.

Los actos de los licenciados Pellot Córdova y Pellot Cestero de ninguna forma exaltaron el honor y la dignidad de la profesión.

**V.**

Ahora bien, al momento de ejercer nuestra jurisdicción disciplinaria, este Tribunal ha expresado que es necesario realizar una evaluación del historial de conducta del abogado para determinar la sanción disciplinaria que se le impondrá. Dicho análisis debe ponderar diversos factores, tales como la buena reputación que ostenta el abogado en la comunidad, su historial previo, si se trata de una conducta aislada, su sincero arrepentimiento, y cualesquiera otras consideraciones pertinentes a tenor con los hechos. Véase *In re González Acevedo*, 197 DPR 360, 368 (2017).

A esos efectos, la Comisionada Especial expresó en su informe que los licenciados Pellot Córdova y Pellot Cestero son miembros de la clase togada hace varios años. En cuanto al licenciado Pellot Córdova, no ha habido quejas ni querellas previas en su contra. Por su parte, contra la licenciada Pellot Cestero se presentó previamente una queja, la cual fue posteriormente archivada por este Tribunal. Además, la Comisionada Especial resaltó que el señor Pérez Camacho expresó que estaba satisfecho con la labor realizada por ambos letrados en su caso. En adición, éstos gozan de buena reputación como abogados, y han sido distinguidos miembros del Programa Pro Bono del Colegio de Abogados. Por último, y luego de evaluar la evidencia presentada en cuanto

al buen carácter de los juristas, la Comisionada Especial expresó que la actuación de los licenciados se trató de un hecho aislado y no un patrón de conducta.

Por otra parte, la Comisionada Especial destacó que los letrados no aceptaron haber incurrido en conducta contraria al Código de Ética Profesional, y los honorarios retenidos aún no han sido devueltos, pues el señor Pérez Camacho no aceptó la oferta que éstos le hicieron.

**VI.**

Por los fundamentos que anteceden, resolvemos que el licenciado Pellot Córdova y la licenciada Pellot Cestero incumplieron con los deberes que emanan de los Cánones 23, 24 y 38 del Código de Ética Profesional, y con la prohibición estatutaria de no cobrar honorarios profesionales a trabajadores en reclamaciones laborales. A esos efectos, ordenamos la suspensión de la abogacía del licenciado Pellot Córdova, y la suspensión de la abogacía de la licenciada Pellot Cestero, ambos por un término de tres (3) meses. Se les impone el deber de notificarle a sus clientes sobre su inhabilidad de continuar representándolos, devolver los honorarios por trabajos no realizados e informar oportunamente de su suspensión a cualquier foro judicial y administrativo en el que tengan un caso pendiente. Deberán acreditar a este Tribunal el cumplimiento con lo anterior en un término de treinta (30) días, contados a partir de la notificación de la presente Opinión.

Además, según lo dispuesto en el Art. 4 de la Ley Núm. 402, *supra*, se les instruye a que, de manera inmediata, procedan a devolverle al señor Pérez Camacho $8,017.70 dólares, y pagarle una suma equivalente en concepto de daños líquidos. Deberán acreditar ese hecho mediante escrito en un término de treinta (30) días.

Se dictará sentencia de conformidad.


                                        Anabelle Rodríguez Rodríguez
                                                Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| *In re*<br><br>Enrique Pellot Córdova<br>(TS-6,142)<br><br>Sheila Pellot Cestero<br>(TS-14,581) | **Núm.** CP-2016-0017 |

SENTENCIA

San Juan, Puerto Rico, a 11 de agosto de 2020.

Por los fundamentos expuestos en la Opinión que antecede, se ordena la suspensión de la abogacía del Lcdo. Enrique Pellot Córdova, y la suspensión de la abogacía de la Lcda. Sheila Pellot Cestero, ambos por un término de tres (3) meses. Se les impone el deber de notificarle a sus clientes sobre su inhabilidad de continuar representándolos, devolver los honorarios por trabajos no realizados e informar oportunamente de su suspensión a cualquier foro judicial y administrativo en el que tengan un caso pendiente. Deberán acreditar a este Tribunal el cumplimiento con lo anterior en un término de treinta (30) días, contados a partir de la notificación de la presente Opinión.

Además, según lo dispuesto en el Art. 4 de la Ley Núm. 402 de 12 de mayo de 1950, según enmendada, 32 LPRA sec. 3117, se les instruye a que de manera inmediata procedan a devolverle al señor Pérez Camacho $8,017.70 dólares, y pagarle una suma equivalente en concepto de daños líquidos. Deberán acreditar ese hecho mediante escrito en un término de treinta (30) días.

Notifíquese esta Opinión y Sentencia por medio del correo electrónico registrado en el Registro Único de Abogados y Abogadas de Puerto Rico (RUA) al señor Pellot Córdova y a la señora Pellot Cestero. El recibo de la notificación será confirmado por la vía telefónica.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emite una Opinión de conformidad a la que se une el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Rivera García. La Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez no intervinieron.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| In re:<br><br>Enrique Pellot Córdova<br><br>Sheila Pellot Cestero | CP-2016-0017 |  |

Opinión de Conformidad emitida por la Jueza Asociada señora Pabón Charneco a la cual se unen los Jueces Asociados señores Kolthoff Caraballo y Rivera García.

En San Juan, Puerto Rico, a 11 de agosto de 2020.

La doctrina de separación de poderes juega un papel protagónico en el análisis sobre la funcionalidad de la estructura gubernamental tripartita en la que operamos. Es parte intrínseca de nuestro ordenamiento constitucional y busca asegurar que las tres Ramas de Gobierno ejerzan sus respectivas responsabilidades sin presión indebida de las otras. Lo anterior viabiliza la puesta en marcha del sistema de pesos y contrapesos que caracteriza a nuestra forma republicana de gobierno. De esta manera, se fomenta la protección de la libertad de los ciudadanos y la independencia entre los tres poderes gubernamentales. *Díaz Carrasquillo v. García Padilla*, 191 DPR 97, 110 (2014).

Por virtud de la doctrina de separación de poderes, las actuaciones del Poder Legislativo y del Ejecutivo merecen gran deferencia de nuestra parte. Esto, por ser las Ramas llamadas a establecer y ejecutar la política pública del Estado. *San Miguel Lorenzana v. E.L.A.*, 134 DPR 405, 431 (1993). No obstante, la deferencia concedida no llega al nivel de una renuncia a nuestro deber de interpretar el derecho. El que demos deferencia a las demás Ramas de Gobierno en el ejercicio de sus facultades no significa que abdiquemos nuestra responsabilidad de determinar si los actos realizados por ellas están comprendidos dentro de los poderes constitucionales que ostentan. Además, la deferencia que surge como consecuencia de la doctrina de separación de poderes no es unidireccional. Por ello, la Rama Judicial "exigirá para sí la misma deferencia que le otorga a las actuaciones discrecionales de las otras ramas que no violen la Constitución ni las leyes". *Alvarado Pacheco y otros v. ELA*, 188 DPR 594, 624 (2013).

Ante nosotros tenemos una instancia en la cual otra Rama gubernamental se extralimitó en el desempeño de sus capacidades. En particular, la Asamblea Legislativa interfirió en la autoridad que tiene este Tribunal de reglamentar la profesión legal. Al concebirse los abogados como funcionarios de los tribunales, estos ejercen una función social que le corresponde a la Rama Judicial regular mediante su poder inherente. *Rivera Schatz v. ELA y C. Abo. P.R. II*, 191 DPR 791, 803 (2014). Aunque la Rama Legislativa

puede legislar sobre asuntos relacionados a la profesión legal, hemos enfatizado que "toda legislación dirigida a reglamentar de cualquier modo la profesión legal es puramente directiva y no mandatoria". *Íd.*, pág. 807. Por lo tanto, no cabe duda de que, al fin y al cabo, es exclusivamente a este Foro a quien le corresponde custodiar los linderos de la profesión legal.

En este caso, la ley aprobada por la Asamblea Legislativa impone un término prescriptivo de tres (3) años para que se inicie una acción disciplinaria en contra de un abogado o notario. La Exposición de Motivos de la Ley Núm. 43-2016 revela que se creó con la intención de contrarrestar el perjuicio que pudiera causársele a un profesional del derecho que, por el transcurso del tiempo, no logre contar con la prueba necesaria para defenderse de una acción disciplinaria. También tiene como objetivo disuadir la presentación de acciones que pudieran ser frívolas, producto de la mala fe de personas inescrupulosas. Así, estimaron que era "obligación de [la] Asamblea Legislativa legislar para precisar el término prescriptivo de las acciones disciplinarias contra los profesionales del derecho […]". Exposición de Motivos de la Ley Núm. 43-2016, 2016 Leyes de Puerto Rico 630.

Al aprobarse la Ley Núm. 43-2016 se provocó una intrusión en la facultad que posee este Tribunal para determinar el momento apto y bajo qué circunstancias

corresponde el comienzo de los procesos disciplinarios en contra de los abogados que tenemos el deber de supervisar. Aunque la ley establece excepciones a la aplicación del término, las mismas no fueron producto de una evaluación mesurada por este Tribunal y lucen como una manera de aplacar la falta cometida. Aún está por precisarse si es deseable la creación de un término prescriptivo para este tipo de acción.[8] Determinar la utilidad de implantar este término

---

[8] Existen jurisdicciones que han adoptado, con excepciones a su aplicación, un término prescriptivo para iniciar acciones disciplinarias contra abogados. Véanse, por ejemplo, C.R.C.P. R. 251.32(i) (2020) (cinco años); Fla. Bar Reg. R. 3-7.16(a)(1) (2020) (seis años); Ga. R. & Regs. St. Bar 4-222(a) (2020) (cuatro años); Mo. Sup. Ct. Rules R. 5.085(a) (2020) (cinco años); 27 N.C.A.C. 1B.0111(f)(4) (2020) (seis años); N.H. Sup. Ct. Rules R. 37A(I)(i)(1) (2020) (dos años); Pa. Disciplinary Board Rule 85.10(a) (2019) (cuatro años); W. Va. Law Disciplinary Proc. R. 2.14 (2020) (dos años). No obstante, la mayoría de las jurisdicciones han decidido no establecer término prescriptivo e incluso existe al menos una que lo tenía y que luego lo eliminó. Véase *In re Venie*, 2017-NMSC-018, 395 P.3d 516, 518-519 (2017). La resistencia en adoptar un término prescriptivo puede que la explique el comentario a la Regla 32 de las Reglas Modelo para la Ejecución de Procesos Disciplinarios contra Abogados, promulgadas por la American Bar Association (ABA). El comentario lee así:

> Statutes of limitation are wholly inappropriate in lawyer disciplinary proceedings. Conduct of a lawyer, no matter when it has occurred, is always relevant to the question of fitness to practice. The time between the commission of the alleged misconduct and the filing of a complaint predicated thereon may be pertinent to whether and to what extent discipline should be imposed, but should not limit the agency's power to investigate. An unreasonable delay in the presentation of a charge of misconduct might make it impossible for an attorney to procure witnesses or the testimony available at an earlier time to meet such a charge.

> Discipline and disability proceedings serve to protect the public from lawyers who are unfit to practice; they measure the lawyer's qualifications in light of certain conduct, rather than punish for specific transgressions. Misconduct by a lawyer whenever it occurs reflects upon the lawyer's fitness. ABA, *Model Rules for Lawyer Disciplinary Enforcement*, pág. 57 (2007).

prescriptivo descansa en la Rama Judicial. Cuando estemos convencidos de que debe adoptarse un término prescriptivo para la presentación de acciones disciplinarias contra abogados, activaremos nuestro poder inherente de reglamentar la profesión jurídica para así hacerlo. Sin embargo, este no es el momento, ni el mecanismo empleado el adecuado. Así pues, corresponde invalidar la Ley Núm. 43-2016 ya que tiene el efecto de menoscabar nuestro poder de reglamentar la profesión legal como más prudente entendamos.

Finalmente, debo mencionar que me causa gran satisfacción el que en esta ocasión la postura oscilante de la Juez Asociada señora Rodríguez Rodríguez referente a la doctrina de separación de poderes haya acertado en el lado de la razón. No es fácil asumir posturas que provoquen la antipatía de las demás Ramas de Gobierno, pero cuando ocurre una intromisión inconstitucional proveniente del Poder Legislativo en nuestro ámbito de acción, nuestro cargo nos exige defender firmemente a este Tribunal Supremo. Ante tal proceder, y por los fundamentos esbozados tanto aquí como en la Opinión Mayoritaria, es que emito mi voto de Conformidad.


Mildred G. Pabón Charneco
Jueza Asociada