ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| RICARDO R. HATTON RENTAS  Apelante  v.  BLANCA L. SÁEZ ORTIZ  Apelada | **KLAN202500170** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón  Civil Núm. BY2022CV02755  Sobre: Cobro de Dinero |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 5 de mayo de 2025.

Comparece el Sr. Ricardo R. Hatton Rentas (señor Hatton o apelante) y nos solicita que revisemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, notificada el 10 de febrero de 2025. Mediante el referido dictamen, el foro primario declaró No Ha Lugar la *Demanda* en cobro de dinero presentada por el señor Hatton y le impuso el pago de $10,000.00 por concepto de honorarios de abogado.

Por los fundamentos que se exponen a continuación, **CONFIRMAMOS** la *Sentencia* apelada.

I.

El 27 de mayo de 2022, el señor Hatton presentó una *Demanda* en cobro de dinero en contra de la señora Blanca Sáez Ortiz (señora Sáez o apelada).[1] En esencia, alegó que comenzó una relación sentimental con la señora Sáez para octubre de 2018 y, que esta le solicitó que la representara legalmente en el caso *Blanca L. Sáez Ortiz*

_____

[1] *Demanda*, Anejo II, págs. 11-13 del apéndice del recurso.

*v. Antulio Santarrosa y otros*, alfanumérico GB2020CV00331, por difamación en contra del programa *La Comay*.[2] Además, manifestó que acordaron verbalmente un contrato de servicios profesionales con honorarios contingentes a un treinta y tres por ciento (33%) de las sumas reclamadas en dicho caso. Específicamente, arguyó que el 14 de mayo de 2020, solicitó a la producción del programa *La Comay* la suma de $25,000.00 por los daños causados a la apelada. A su vez, esbozó que el 26 de mayo de 2020, presentó una *Demanda* en representación de la señora Sáez, toda vez que el programa La Comay no respondió la reclamación extrajudicial. No obstante, indicó que la apelada solicitó mediante correo electrónico su renuncia como representación legal, por lo que le remitió una carta de cobro reclamando la suma de $25,100.00 por los servicios legales prestados.

En respuesta, el 10 de agosto de 2022, la señora Sáez presentó su *Contestación a Demanda* en la cual negó la mayoría de las alegaciones.[3] Entre sus defensas afirmativas, expuso que se encontraba en el trámite de contratar abogado. Sin embargo, resaltó que el apelante exigió representarla en el caso, puesto que era su pareja y de ese modo se ahorraban los honorarios de abogado. Asimismo, esgrimió que nunca existió un contrato y, que nunca dialogaron con relación a establecer honorarios de abogado. Finalmente, argumentó que el caso de epígrafe tenía el propósito de continuar un patrón de hostigamiento e intimidación en su contra.

---

[2] *Blanca L. Sáez Ortiz v. Antulio Santarrosa y otros*, alfanumérico GB2020CV00331.
[3] *Contestación a Demanda,* Anejo III, págs. 14-17 del apéndice del recurso.

Tras varios trámites procesales, el 2 de octubre de 2023, las partes presentaron el *Informe Conferencia con Antelación a Juicio Señalada Para el 3 de octubre de 2023*.[4] De dicho informe surge que el 24 de agosto de 2023, el foro primario notificó una *Resolución* en la cual determinó que los siguientes hechos no estaban en controversia:

1. Las partes tuvieron una relación sentimental que comenzó en octubre de 2018 y culminó en 2021.

2. Las partes son abogados de profesión.

3. Blanca Sáez, representada por Ricardo Hatton Rentas, presentó una demanda contra el Sr. Antulio Santarosa y otras partes el 26 de mayo de 2020. Ese caso tiene el número GB2020CV00331.

4. La demandada solicitó la renuncia de Hatton Rentas como su representante legal en el caso GB2020CV00331 en el año 2021.

5. Las partes no otorgaron contrato escrito.[5]

Posteriormente, el 17 de abril de 2024, la señora Sáez presentó su *Moción Sobre Hechos Probados y Derecho Aplicable*.[6] En esta, resaltó que, durante el juicio, el apelante admitió que no existía un contrato entre las partes y, que previo al caso de epígrafe, nunca le había cobrado por sus servicios. De igual forma, argumentó que el señor Hatton admitió que no tenía ningún documento el cual pudiera establecer que tenía un acuerdo de cobrar el 33% de los honorarios. Por otra parte, apuntó que el apelante admitió que no presentó la bitácora en la cual anotaba todas las gestiones de la oficina. Tampoco trajo como testigo a su asistente para que testificara

---

[4] *Informe Conferencia con Antelación a Juicio Señalada Para el 3 de octubre de 2023,* Anejo IV, págs. 18-40 del apéndice del recurso.
[5] Entrada Núm. 50 del *Sistema Unificado de Manejo y Administración de Casos* (SUMAC).
[6] *Moción Sobre Hechos Probados y Derecho Aplicable,* Anejo VIII, págs. 89-104 del apéndice del recurso.

respecto a la bitácora y la forma y manera en que se preparó la factura de cobro. Por último, argumentó que el apelante aceptó que se ayudaban sin compromiso económico alguno. Cónsono con lo anterior, reiteró que la prueba presentada demostraba que nunca hubo un contrato y, que el ofrecimiento de este para representarla en el caso por difamación fue gratuito. Por ello, razonó que procedía la imposición de honorarios de abogado por temeridad.

Por su parte, el 26 abril de 2024, el señor Hatton presentó su *Memorando de Derecho en Cumplimiento de Orden* en la cual reiteró las alegaciones de la *Demanda* y las gestiones realizadas en el caso.[7] Asimismo, solicitó al Tribunal que tomara conocimiento judicial del caso GB2020CV03331, el cual corroboraba las gestiones realizadas en dicho caso. Por todo lo anterior, solicitó la aplicación de la doctrina *quantum meruit* para evitar enriquecimiento injusto por parte de la apelada.

Celebrado el juicio el 25 y 26 de enero, 5 de febrero y 14 de marzo de 2024, evaluadas las mociones y argumentos de las partes, el 10 de febrero de 2025, el foro primario notificó su *Sentencia*, en la cual declaró No Ha Lugar la *Demanda* presentada por el señor Hatton. Además, le impuso el pago de $10,000.00 por concepto de honorarios de abogado.[8] En primer lugar, realizó las siguientes determinaciones de hechos:

1. El Sr. Ricardo Hatton Rentas es mayor de edad, abogado, soltero y vecino de Guaynabo, Puerto Rico.

---

[7] *Memorando de Derecho en Cumplimiento de Orden*, Anejo IX, págs. 105-113 del apéndice del recurso.
[8] *Sentencia*, Anejo I, págs. 1-10 del apéndice del recurso.

2. La Sr. Blanca L. Sáez Ortiz es mayor de edad, soltera, abogada y vecina de Guaynabo, Puerto Rico.

3. Las partes sostuvieron una relación sentimental que comenzó en octubre de 2018 y culminó en 2021. Durante la vigencia de la relación, las partes se mudaron a una residencia adquirida por el demandante en el área de Guaynabo.

4. La demandada cerró su oficina legal y para agosto de 2019, aceptó un ofrecimiento del demandante, comenzando a trabajar en las facilidades de la oficina legal del Demandante.

5. La demandada realizaba trabajos de naturaleza legal en casos del demandante. Era costumbre, durante la relación entre las partes, asistirse mutuamente en sus casos. Por esta asistencia, la demandada no cobraba honorarios.

6. Por motivo del cierre total decretado como consecuencia de la Pandemia COVID 19, para marzo de 2020, la demandada dejó de ir a la oficina legal del demandante. Para esa fecha las hijas menores de edad de la demandada tomaban clases remoto, por lo que se habilitó un área en la residencia del demandante en la que las menores tomaban clases y la demandada atendía sus asuntos legales.

7. Para mayo de 2020, la demandada, por voz del demandante, se enteró que en un programa televisivo denominado como "La Comay", producido por el Sr. Antulio Santarosa, se había comentado que se encontraba en una condición económica precaria, que debía renta de su oficina legal y de su vehículo, así como otras deudas.

8. La demandada se sintió molesta, enojada y de muy mal humor por entender que la información provista en el programa era falsa.

9. La demandada comenzó a buscar alternativas para la contratación de representación legal con experiencia en casos por difamación, prefiriendo algún abogado que hubiese ganado casos de esta naturaleza contra el Sr. Santarosa.

10. El demandante le manifestó a la demandada que no tenía que buscar representación legal. Como eran pareja, el demandante se ofreció para atender el caso y así la demandada podía economizarse el pago de

honorarios de abogado. La demandada acepto esta oferta.

11. Las partes no otorgaron contrato escrito y no acordaron tarifa sobre honorarios de abogado.

12. El 14 de mayo de 2020, la parte demandante en representación de la demandada notificó una reclamación extrajudicial a la producción del programa "La Comay" en la que solicitaba el pago por la cantidad de $500,000.00 por los daños como consecuencias de las referidas publicaciones.

13. El 26 de mayo de 2020, se presentó el caso de Blanca L. Sáez Ortiz vs. Antulio Santarosa y otros, Civil Núm. GB2020CV00331 sobre Daños y Perjuicios (Libelo y Calumnia)

14. Luego de culminar la relación sentimental, el 9 de diciembre de 2021, la demandada solicitó la renuncia del demandante como su representante legal en el caso GB2020CV00331. El 10 de diciembre de 2021, el demandante presentó su renuncia como representante legal de la demandada.

15. El 19 de mayo de 2022, la parte demandante, mediante carta enviada a la parte demandada, solicito el pago de $25,100.00 por servicios legales prestados en el caso Civil Número GB2020CV00331.

16. La fecha del envió coincidió con la negativa de la demandada de entregarle unas mascotas, controversia que fue atendida en otro proceso judicial.

17. El demandante expreso que la factura enviada se preparó con una "Bitácora" que llevaba su asistente donde se anotaban asuntos que pasaban en la oficina.

18. La "Bitácora" no fue presentada en evidencia ni producida como parte del descubrimiento de prueba.

19. La parte demandante tampoco presentó en evidencia el testimonio de la asistente sobre la forma y manera que se preparó la alegada factura.

20. Como parte de la costumbre, tanto del demandante como de la demandada, de asistirse mutuamente en casos de naturaleza legal, la parte demandada atendió el caso de la Sra. Daisy Costas y del Sr. Carlos Gordiles, ambos clientes del demandante. La demandada no sabe cuánto el demandante

cobro por estos casos, pero ella no cobro por sus servicios.

21. El caso GB2020CV00331 terminó con un desistimiento voluntario, luego de una disculpa del demandado en ese caso. La sentencia fue admitida en evidencia.

En vista de las determinaciones de hechos formuladas, el foro primario determinó que entre las partes nunca existió un contrato verbal de servicios profesionales. Particularmente, señaló que la conversación entre las partes no cumplió con las formalidades requeridas para entender que existía un contrato. Entiéndase, no hubo consentimiento, objeto y causa entre las partes. A su vez, explicó que, cuando la apelada comenzó a buscar asistencia legal para atender su reclamo legal en contra del programa La Comay, el apelante se ofreció asistirla. Por ello, reiteró que la controversia trataba sobre ayuda legal a una pareja consensual. De igual forma, el foro primario enfatizó que ambas partes eran abogados por lo que, de haber existido la conversación según relatada por el apelante, estos hubiesen reducido a escrito el acuerdo con relación a los honorarios de abogado. Ello no ocurrió. A su vez, indicó que el testimonio de la señora Sáez fue lógico, confiable y natural.

Por otra parte, el foro primario expresó que el señor Hatton no presentó el documento o bitácora de la cual se obtuvo la información para preparar la factura enviada a la señora Sáez. Por tanto, razonó que, de haberse presentado dicho documento, resultaría adverso a la alegación del apelante con relación a la existencia de un contrato de servicios profesionales. Finalmente, resolvió que no aplicaba la doctrina de *quantum meruit*, puesto que no existía un contrato entre las partes.

Sostuvo que dicha doctrina operaba como parte de un contrato de servicios de abogado y no había claridad en cuanto al monto de los honorarios a ser devengados.

Inconforme, el 28 de febrero de 2025, el apelante presentó el recurso que nos ocupa y formuló los siguientes señalamientos de error:

> Erró el TPI al no aplicar la doctrina de *quantum meruit* a los hechos de este caso por concluir que no existe un contrato.
>
> Erró el TPI al concluir que la no presentación de una "bitácora" le es de aplicación la presunción en contra de la existencia de un contrato.
>
> Erró el TPI al aplicar arbitrariamente la Regla 304 de la Reglas de Evidencia exhibiendo prejuicio y parcialidad.
>
> Erró el TPI al realizar una imposición de honorarios de abogado contra la parte demandante apelante.

Así las cosas, el 7 de marzo de 2025, emitimos una *Resolución* concediendo a la parte apelada el término dispuesto en el Reglamento de este Tribunal, 4 LPRA Ap. XXXII-B, para presentar su alegato. Oportunamente, el 28 de marzo de 2025, la señora Sáez presentó su *Alegato de la Parte Apelada*.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso.

II.

-A-

El contrato de servicios legales se considera una variante del contrato de arrendamiento de servicios del Artículo 1381 del Código Civil de 2020, 31 LPRA sec. 10291; *In re: Rodríguez Mercado*, 165 DPR 630, 641 (2005). No obstante, el Tribunal Supremo de Puerto Rico ha reiterado insistentemente que es un contrato *sui generis*, "revestido de las consideraciones éticas que

regulan la profesión legal". *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 270 (2021), citando a *In re: Vélez Lugo*, 180 DPR 987 (2011); Canon 24 del Código de Ética Profesional, 4 LPRA Ap. IX. Ahora, el abogado o abogada que presta sus servicios tiene derecho a recibir una compensación razonable por éstos. *Cruz Pérez v. Roldán Rodríguez et al.*, *supra*, pág. 271; *Pérez v. Col. Cirujanos Dentistas de P.R.*, 131 DPR 545, 558 (1992).

De otro lado, el precepto legal *quantum meruit* significa "tanto como se merece". I. Rivera García, *Diccionario de Términos Jurídicos*, 3ra ed. rev., San Juan, Ed. Lexis, 2000, pág. 395, citado en *Blanco Matos v. Colón Mulero*, 200 DPR 398, 412 (2018). En esencia, la doctrina reconoce el derecho que tiene toda persona a reclamar el valor razonable de los servicios que ha prestado. *Pérez v. Col. Cirujanos Dentistas de P.R.*, *a las* págs. 557-558. Es decir, en aras de evitar el enriquecimiento injusto, la doctrina provee un remedio en restitución basado en elementos de justicia y permite la posibilidad de reclamar el valor razonable cuando no se hubiera pactado un precio cierto. *Blanco Matos v. Colón Mulero*, *supra*, a la pág. 413. Así, pues, de ordinario, un abogado o una abogada "puede reclamar compensación por los servicios que ha prestado a base de un *quantum meruit* cuando no exista un pacto expreso de honorarios […]". *Id.*, citando a *Pérez v. Col. Cirujanos Dentistas de P.R.*, *supra*, a la pág. 561.

-B-

La Regla 304(5) de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 304(5), R. 304(5), dispone una serie de presunciones controvertibles. En lo pertinente a la

controversia ante nuestra consideración, "[t]oda evidencia voluntariamente suprimida resultará adversa si se ofreciere". R. 304 (5), *supra*. De igual forma, para la aplicación del inciso 5 es indispensable la voluntariedad de la supresión de la prueba. R. Emmanuelli Jiménez, *Prontuario de derecho probatorio puertorriqueño*, 4ª ed. rev., Puerto Rico, Ed. SITUM, 2015, pág. 172.

Por lo tanto, al analizar la Regla 304(5), *supra*, debemos mirar los elementos necesarios para activar la presunción. Específicamente, la presunción se activa cuando: (1) una parte tiene disponible una prueba; (2) que no fue presentada en juicio; (3) en el ejercicio voluntario de la discreción de la parte. La lógica nos lleva a concluir que la prueba no fue presentada porque resultaba perjudicial a la parte que la ofreció.

> Un caso común es cuando no se somete en evidencia toda la prueba anunciada o cuando no se sientan a declarar todos los testigos. En este último caso, es necesario poner a disposición de las otras partes a los testigos para que puedan entrevistarlos y decidir si los utilizarán en el juicio. R. Emmanuelli Jiménez, *op. cit.*, pág. 172.

-C-

En nuestro ordenamiento jurídico, la concesión de costas en el litigio está gobernada por la Regla 44.1 de las de Procedimiento Civil. 32 LPRA Ap. V, R. 44.1. En lo pertinente, ésta dispone que "le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión […]". *Íd*. De acuerdo con la norma procesal, el criterio para que el tribunal decida cuáles partidas de las costas solicitadas concede, es que se trate de los "gastos incurridos

necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra." *Íd.*

Particularmente, la Regla 44.1 señala en el inciso (d), que en caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda que corresponde a tal conducta. Aunque el concepto temeridad no está expresamente definido por la Regla 44.1 (d) de Procedimiento Civil, se trata de una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713 (1987).

El propósito de este mecanismo es penalizar al que con su conducta ha obligado a la parte adversa en un litigio a incurrir en gastos y con ello le ha causado innecesariamente molestias e inconvenientes. *SLG Flores-Jiménez v. Colberg*, 173 DPR 843, 867 (2008). La imposición del pago de honorarios de abogado, de conformidad con la Regla 44.1, *supra*, depende de que el tribunal haga una determinación de temeridad.

Por último, "[l]a determinación de si un litigante ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador". *Raoca Plumbing v. Trans World*, 114 DPR 464, 468 (1983). El tribunal impondrá la cuantía que el juzgador entienda que corresponde a la conducta temeraria. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 212 (2013); citando a *Andamios de PR v. Newport Bonding*, 179 DPR 503, 519-

520 (2010). Los criterios para evaluar al determinar si una parte litigante incurrió en temeridad son: (1) el grado de temeridad desplegada durante el litigio; (2) la naturaleza del procedimiento judicial; (3) los esfuerzos y la actividad profesional ejercida en el litigio; (4) la habilidad y reputación de los abogados. *Asociación de Condóminos v. Trelles Reyes*, 120 DPR 574, 579 (1988).

Cónsono con lo anterior, reconocemos que de ordinario el ejercicio de las facultades discrecionales por el foro de primera instancia merece nuestra deferencia. Como corolario de lo anterior, sólo intervendremos con el ejercicio de dicha discreción en aquellas situaciones en que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. *Rivera Durán v. Banco Popular*, 152 DPR 140 (2000).

-D-

Los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos de los tribunales de primera instancia. *ELA v. SLG Negrón-Rodríguez*, 184 DPR 464, 486 (2012). Esta deferencia hacia el foro primario responde al hecho de que el juez sentenciador es el que tiene la oportunidad de recibir y apreciar toda la prueba oral presentada, de escuchar la declaración de los testigos y evaluar su *demeanor* y confiabilidad. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67 (2009).

Ahora bien, la doctrina de deferencia judicial no es de carácter absoluto, pues debe ceder ante las

posibles injusticias que puedan acarrear unas determinaciones de hechos que no estén sustentadas por la prueba desfilada ante el foro primario. Así, como foro apelativo, podemos intervenir con la apreciación de la prueba oral que haga el Tribunal de Primera Instancia, cuando el foro primario actúe con pasión, prejuicio, parcialidad, o incurra en un error manifiesto al aquilatarla. *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011); *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 916 (2011).

Además, se podrá intervenir cuando la apreciación de la prueba cuando no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba y cuando su apreciación se distancia "de la realidad fáctica o ésta [es] inherentemente imposible o increíble." *González Hernández v. González Hernández*, supra, pág. 777; *Pueblo v. Santiago et al.*, 176 DPR 133, 148 (2009).

Se exceptúan de la regla de deferencia las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos están en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. *González Hernández v. González Hernández*, supra.

III.

En el recurso que nos ocupa, el señor Hatton solicitó la revisión de una *Sentencia* emitida por el foro primario, notificada el 10 de febrero de 2025. En primer lugar, el apelante sostiene que el foro primario incidió al no aplicar la doctrina de *quantum meruit* a los hechos de este caso por concluir que no existe un contrato. Además, arguye que el foro primario erró al

concluir que la no presentación de la bitácora conllevaba la aplicación de la presunción en contra de la existencia de un contrato. Respecto al tercer señalamiento de error, alega que el foro primario incidió al aplicar arbitrariamente la Regla 304 de la Reglas de Evidencia, *supra*, exhibiendo prejuicio y parcialidad. Finalmente, aduce que el foro primario erró al realizar una imposición de honorarios de abogado en su contra.

Previo a discutir los señalamientos de error, es meritorio señalar que el señor Hatton no presentó la transcripción de la prueba oral desfilada en el Tribunal de Primera Instancia. Ante este cuadro, no podemos evaluar la apreciación de la prueba realizada por el foro primario. Por lo cual acogemos las determinaciones de hechos realizadas por el foro priamrio en su totalidad y evaluaremos la corrección de su aplicación en derecho.

Respecto al primer señalamiento de error, el señor Hatton insiste en que existía un contrato verbal de servicios legales profesionales. En desacuerdo, la señora Sáez aduce que era pareja del apelante, y que era una práctica entre estos ayudarse mutuamente en el manejo de los casos. Añadió, que el señor Hatton se ofreció a representarla legalmente. Nótese que, el foro primario le mereció credibilidad al testimonio de la apelada. Sin embargo, el apelante no presentó una transcripción de la prueba oral que nos permita examinar si en efecto existía un contrato verbal entre las partes.

Del expediente ante nuestra consideración surge que, el 24 de agosto de 2023, el foro primario notificó una *Resolución* en la cual determinó que las partes no otorgaron contrato escrito. Nótese que, dicha

determinación advino final y firme, toda vez que no fue impugnada ante un foro de mayor jerarquía. Tampoco surge del legajo apelativo que la señora Sáez suscribió un contrato con el apelante a los fines de ser representada por este en el caso de difamación en contra del programa La Comay.

No podemos olvidar que, la doctrina de *quantum meruit* reconoce el derecho que tiene toda persona a reclamar el valor razonable de los servicios que ha prestado. *Pérez v. Col. Cirujanos Dentistas de P.R.*, *a las* págs. 557-558. Sin embargo, el Tribunal Supremo de Puerto Rico, resolvió que, "es deseable que el acuerdo o pacto de honorarios a ser cobrado sea reducido a escrito, con la mayor claridad en sus términos y libre de ambigüedades". *Pérez v. Col. Cirujanos Dentistas de P.R.*, a la pág. 554. Evaluado el expediente en su totalidad y en ausencia de una transcripción de la prueba oral, colegimos que el foro primario no cometió error al determinar que las gestiones realizadas por el apelante en el caso de difamación de la apelada demostraban únicamente ayuda legal a una pareja consensual, por lo que no existía un contrato entre las partes. Entiéndase, al no existir un contrato entre las partes, no es de aplicación la doctrina de *quantum meruit*. Por tanto, el primer señalamiento de error no se cometió.

En cuanto al segundo señalamiento de error, la Regla 304(5) de Evidencia, supra, dispone que toda evidencia voluntariamente suprimida resultará adversa si se ofreciere. Específicamente, la presunción se activa cuando: (1) una parte tiene disponible una prueba; (2) que no fue presentada en juicio; (3) en el ejercicio voluntario de la discreción de la parte. El

señor Hatton argumenta que tenía una bitácora en la cual constaban todas las gestiones realizadas de su oficina legal. Asimismo, indica que de dicha bitácora se obtuvo la información para preparar la factura de los servicios legales ofrecidos a la señora Sáez.

Sin embargo, no surge del *Informe de Conferencia con Antelación a Juicio* ni de las minutas que este presentara la bitácora como evidencia. Tampoco presentó como testigo a su asistente a los fines de testificar con relación al contenido de la bitácora y las facturas de la apelada. Por ello, es forzoso concluir que opera la presunción de la Regla 304(5) de Evidencia, *supra*, con relación a la prueba voluntariamente suprimida resultare adversa si se ofreciere. Es decir, de haberse presentado dicho documento, resultaría adverso a las alegaciones del apelante con relación a la existencia de un contrato de servicios profesionales. Cónsono con lo anterior, resolvemos que no incidió el foro primario al aplicar la presunción de la Regla 304 (5) de Evidencia, *supra*, a la presentación de la bitácora.

La Regla 44.1 señala en el inciso (d), que en caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda que corresponde a tal conducta. Cabe precisar que, "[l]a determinación de si un litigante ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador". *Raoca Plumbing v. Trans World*, 114 DPR 464, 468 (1983). Cónsono con lo anteior, sólo intervendremos con el ejercicio de dicha discreción en aquellas situaciones en que se demuestre que el foro

recurrido actuó con prejuicio o parcialidad, abuso de discreción o se equivocó en la interpretación de normas procesales o de derecho. En este caso, no le asiste la razón al apelante al argumentar que el foro primario incidió al imponer la cuantía de $10,000.00 en honorarios de abogado. Por tanto, concluimos que el cuarto señalamiento de error no se cometió.

Finalmente, el señor Hatton plantea que el foro primario actuó de manera arbitraria exhibiendo prejuicio y parcialidad. De una lectura del expediente ante nos, no surge que el Tribunal haya actuado mediando pasión, prejuicio o parcialidad. Añadimos que, el señor Hatton no presentó la transcripción de la prueba oral, por lo que estamos impedidos de examinar si el juez actuó con prejuicio o parcialidad durante el juicio.

Reiteramos que como norma sentada los foros revisores no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos de los tribunales de primera instancia. *ELA v. SLG Negrón-Rodríguez*, supra, pág. 486. Esto responde al hecho de que es el juez sentenciador quien tuvo la oportunidad de recibir y apreciar la prueba oral presentada, de escuchar la declaración de los testigos y determinar su confiablidad. *Suárez Cáceres v. Com. Estatal Elecciones*, supra, pág. 67. A pesar de esto, esta deferencia no es de carácter absoluto, pues debe ceder cuando las determinaciones de hechos no están sustentadas por la prueba desfilada ante el foro primario. *González Hernández v. González Hernández*, supra, págs. 776-777. En virtud de lo anterior,

colegimos que los señalamientos de error no se cometieron.

IV.

Por los fundamentos antes expuestos, **CONFIRMAMOS** la Sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones